Opinion
 

 HAERLE, J.
 

 I. Introduction
 

 Twenty counties in this state, including Marin County, have established retirement plans for county employees and employees of other governmental entities located within the county pursuant to the County Employees Retirement Law of 1937 (CERL) as codified in 1947 (Gov. Code, § 31450 et seq.
 
 [1]
 
 ). Due to impending fiscal shortfalls facing these counties, in 1977 the Legislature enacted section 31483, which clarified the authority of counties to establish tiers in their retirement plans. We are called upon to assess the impact of this legislation on the “redeposit rights” of certain Marin County
 
 *1512
 
 employees. These employees, appellants here, were originally employed prior to the establishment of tiers in Marin County, were members of the retirement plan, left employment, withdrew their accumulated retirement contributions, were subsequently reemployed after the establishment of the tiers, redeposited their retirement contributions pursuant to section 31652, subdivision (a)
 
 [2]
 
 and requested readmission to the more favorable retirement tier. We conclude that such redepositing employees must be returned to the more favorable tier of the Marin County plan and, accordingly, reverse the trial court’s judgment.
 

 II. Background
 

 Marin County’s retirement plan is governed by CERL. Respondents in this appeal are the Marin County Employees’ Retirement Association (MCERA), its board of directors, and Norman Klein, its administrator (sometimes collectively referred to as respondents or MCERA).
 

 In 1977, the Legislature enacted section 31483, which provides: “Notwithstanding any other provision of law, whenever the governing body of a county or district has made a particular provision or provisions of this chapter applicable in such county or district through the adoption of an ordinance or resolution, such governing body may at any time thereafter adopt a further ordinance or resolution terminating the applicability of such provision or provisions as to employees of the county or district whose services commence after a given future date specified in the latter ordinance or resolution.”
 

 Pursuant to this statute, on June 10, 1980, the Marin County Board of Supervisors adopted its Resolution No. 80-179. The resolution provides in pertinent part: “Now, Therefore, Be It Resolved that the optional provisions of the County Employee’s Retirement Act of 1937, heretofore adopted and specified below, shall not be applicable to persons who are hired by the County of Marin in the miscellaneous category of the Marin County Retirement System on or after July 1, 1980: ...[*][] Be It Further Resolved that the provisions applicable to calculations of the benefits for persons employed on or after July 1, 1980, in the miscellaneous category of the Marin County Retirement System shall be as follows: . . . .” The effect of the resolution was to create a two-tier retirement system: Persons employed prior to July 1, 1980, continue in the original plan, now denominated tier I,
 
 *1513
 
 while those employed after that date fall under the new tier II plan. Employees falling within tier II contribute less to their retirement and accordingly are entitled to receive fewer benefits upon retirement.
 
 [3]
 

 Appellants Gary Aquilino, Sonja D. Jestadt, Charmaine Derham, Shirley Anderson, Kathy Rael, and Sandra White-Haworth were all employees of the county and members of MCERA prior to 1980. Each appellant left county employment, withdrew his or her accumulated retirement contributions, was subsequently reemployed by the county after 1980, and thereafter attempted to reenter the tier I plan.
 
 [4]
 

 There is no dispute among the parties that CERL sanctions receipt by returning employees of service credit toward retirement for prior employment by the county upon redeposit of withdrawn retirement contributions pursuant to section 31652. That section provides in pertinent part
 
 [5]
 
 : “(a) Any member may redeposit in the retirement fund, prior to filing an application
 
 *1514
 
 for retirement, by lump sum payment or by installment payments over a period of one year or for a longer time upon approval of the board, an amount equal to all of the accumulated normal contributions which he has withdrawn, plus regular interest thereon from the date of separation from the retirement system, and his membership is the same as if unbroken by such termination. Except as provided in this section his rate of contribution shall be based on age at the nearest birthday at time of reentrance into the system. If he does not redeposit all of the accumulated normal contributions previously withdrawn he shall be considered as a new member without credit for any previous service.” Similarly, section 31642
 
 [6]
 
 provides in part: “The withdrawal of accumulated contributions followed by the redeposit of the contributions upon re-entrance into service does not constitute a break in the continuity of service.” Each appellant has redeposited his or her withdrawn contributions. The parties dispute whether upon redepositing the employees are entitled to reenter tier I or must remain in tier II.
 

 The present litigation began in October 1994 when (shortly after his return to county service) appellant Aquilino notified the retirement administrator (respondent Klein) that he had elected to redeposit his withdrawn retirement
 
 *1515
 
 contributions and to purchase credit for service performed during his initial six-month probationary period. At the same time, Aquilino requested that he be readmitted to tier I.
 

 Klein agreed that Aquilino was entitled to purchase his prior service and redeposit his withdrawn contributions. However, on advice of the Marin County counsel, Aquilino’s request for readmission to tier I was denied on the ground that he was not eligible for that tier under the terms of Resolution No. 80-179. As was the case with the other appellants, Aquilino’s purchased nonmembership service and redeposited tier I contributions, both paid for at the higher tier I employee contribution rates, were credited only as tier II service.
 

 Aquilino continued trying to gain readmittance to tier I through a series of meetings and correspondence with county counsel and Klein. On May 15 and July 10, 1996, the MCERA Board considered Aquilino’s request. At the July 10 meeting, the board denied the request by a six-to-three vote.
 

 As part of its deliberative process, the board attempted to determine how other CERL counties treat similar requests. No consensus emerged from responses by counties with tiered plans to the county counsel’s survey. The details of each county’s plan differ. Several counties, like Marin, require redepositing employees to pay back the full amount withdrawn (in effect buying back service time at the more expensive rates of the more favorable tier), but provide the employees only with the less favorable benefits. One other county implemented this policy through negotiated agreements with its unions. The majority of responding counties (five) permit the redepositing employee to reenter the more favorable tier. Two counties prorate the benefits between tiers based upon how much is deposited in each tier at the time of retirement. One county permits redepositing employees to buy back their service credits at the rates applicable to the less favorable tier and then provides benefits under that tier.
 

 On September 4, 1996, appellants’ counsel wrote to the MCERA Board, requesting that the remaining appellants be readmitted to tier I or, in the interest of efficiency, that the board stipulate to exhaustion of appellants’ administrative remedies in order that their claims could be resolved in court with Aquilino’s claim. County counsel responded by stipulating that appellants had exhausted their administrative remedies.
 

 All appellants then sought a writ of mandamus or other appropriate relief from the Marin County Superior Court. The trial court denied any relief. Appellants timely appealed the trial court’s ruling.
 

 
 *1516
 
 III. Discussion
 

 Appellants claim that section 31483 and Resolution No. 80-179 do not affect their right to reenter tier I based upon their “unbroken membership” in the retirement plan pursuant to section 31652(a), and their “continuous service” with the county pursuant to section 31642. Respondents disagree.
 

 Our task, thus, is to “ ‘ascertain the intent of the Legislature so as to effectuate the purpose of the law.’ [Citation.] In determining that intent, we first examine the words of the respective statutes: ‘If there is no ambiguity in the language of the statute, “then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.” [Citation.] “Where the statute is clear, courts will not ‘interpret away clear language in favor of an ambiguity that does not exist.’ [Citation.]’ ” [Citation.] If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] ‘We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.’ ”
 
 (People
 
 v.
 
 Coronado
 
 (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) “[T]he courts ‘should construe every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.’ ”
 
 (Ford & Vlahos
 
 v.
 
 ITT Commercial Finance Corp.
 
 (1994) 8 Cal.4th 1220, 1234 [36 Cal.Rptr.2d 464, 885 P.2d 877], quoting
 
 Clean Air Constituency
 
 v.
 
 California State Air Resources Bd.
 
 (1974) 11 Cal.3d 801, 814 [114 Cal.Rptr. 577, 523 P.2d 617].) “Any ambiguity or uncertainty in the meaning of pension legislation must be resolved in favor of the pensioner, but such construction must be consistent with the clear language and purpose of the statute. [Citations.]”
 
 (Ventura County Deputy Sheriffs’ Assn.
 
 v.
 
 Board of Retirement
 
 (1997) 16 Cal.4th 483, 490 [66 Cal.Rptr.2d 304, 940 P.2d 891].)
 

 With these principles in mind, we begin our analysis.
 

 Without doubt, section 31483 was intended to clarify the authority of CERL counties to rescind for new employees more generous optional retirement benefits extended under CERL so that counties could reduce pension fund liabilities during the economic downturn of the late 1970’s. (See Assem. Com. on Public Employees and Retirement, Bill Analysis, Sen. Bill No. 693; Cal. Agricultural & Services Agency, Enrolled Bill Rep., Sen. Bill No. 693.) While the statute speaks in terms of employees whose
 
 *1517
 
 “services commence after a given future date specified . . . the statute does not define “commence” nor does either it or its legislative history directly address its application to returning or redepositing employees.
 

 Respondents contend that the Legislature must have intended section 31483 to apply to redepositing employees. In so arguing, they invoke the maxim that the Legislature is deemed to be aware of the existing judicial decisions and to have enacted the statute in light of the existing state of the law. (E.g.,
 
 People
 
 v.
 
 McGuire
 
 (1993) 14 Cal.App.4th 687, 694 [18 Cal.Rptr.2d 12].) The respondents then point to the holding of
 
 Abbott
 
 v.
 
 City of Los Angeles
 
 (1960) 178 Cal.App.2d 204, 209 [3 Cal.Rptr. 127]
 
 (Abbott)
 
 to support their claim. Respondents’ reliance on
 
 Abbott
 
 is unavailing.
 

 Abbott
 
 resolved the claims to a more generous pension plan of several police officers and firefighters who had resigned when the law provided for a “fluctuating pension” and who were reemployed when a less favorable “fixed pension” was in effect. The appellate court held: “It is clear that the 12 resigned members lost their right to receive a fluctuating pension by reason of their resignations. The voluntary resignation of a municipal employee terminates all rights and duties of his employment and upon a rehiring he enters into a new contract with his employer.” (Abbott,
 
 supra,
 
 178 Cal.App.2d at p. 209.) The
 
 Abbott
 
 court, however, never reached the issue of the effect of voluntary resignation upon the statutory redeposit rights set forth in sections 31642 and 31652. As appellants persuasively argue, the holding of
 
 Abbott
 
 cannot be extended to vitiate statutory redeposit rights, since such rights necessarily survive voluntary termination; redeposit rights cannot be invoked until after an employee has left county employment and then been rehired. Accordingly, there is nothing about the state of the law at the relevant times that supports the proposition that the Legislature and the Marin County Board of Supervisors necessarily must have intended redepositing employees to be treated the same as newly hired or nonredepositing employees for purposes of assigning pension tiers.
 

 Respondents also claim that the “notwithstanding any other law” provision of section 31483 was intended to confer the necessary authority to relegate redepositing members to less favorable tiers. We believe this assertion simply begs the question. By this language, the Legislature obviously intended that no other law should preclude a county from restructuring its pension plan as the Legislature intended to permit. It does not answer the question whether the Legislature intended to extend authority to treat redepositing employees the same as newly hired or nonredepositing employees.
 

 
 *1518
 
 We therefore must decide whether appellants are correct that sections 31642 and 31652 can and should be interpreted to require their readmission to the more favorable retirement tier.
 

 We begin with the section that most specifically addresses appellants’ claim, section 31652(a). Appellants contend that, pursuant to that section, once a returning employee completes the redeposit of withdrawn retirement contributions, the employee resumes the same membership status as if the employee had never left county employment. Respondents argue that the statute has nothing to do with tier status; rather, it is limited to calculation of a redepositing employee’s credit for time of service. We conclude that appellants’ interpretation of the statute is more persuasive.
 

 The statute states that, once redeposit is completed, the employee’s “membership is the same as if unbroken by such termination.” (§ 31652(a).) The concept of “unbroken membership” is clearly broader than “service credit.” Significantly, the Legislature used the term “service credit” elsewhere in CERL (indeed, elsewhere in this very subsection) and surely would have used it in place of “unbroken membership” if it had intended the effect of the statute to be so limited.
 
 (Las Virgenes Mun. Wat. Dist.
 
 v.
 
 Dorgelo
 
 (1984) 154 Cal.App.3d 481, 486 [201 Cal.Rptr. 266] [“. . . when different terms are used it is presumed that different meanings are intended”].) The plain import of the language employed is that the redepositing employee reclaims the same membership status as a similarly situated member who had never left county employment or has elected deferred retirement in lieu of withdrawing accumulated funds.
 

 We do not, as the trial court did, draw a contrary inference from the fact that the Legislature has provided that a returning member’s contribution rate shall be “based on age at the nearest birthday at the time of reentrance into the system,” rather than at the time of original employment. (§ 31652(a).) This language sets forth an exception to the reclamation of membership status, i.e., that a member not falling within the categories described in subdivisions (b) and (c) will have a higher rate of contribution upon re-entrance into the plan. This higher rate is necessary to ensure that the county’s chosen level of annuity will be funded by the time the redepositing employee, who is now older, retires. In our view, the existence of this exception demonstrates that, when the Legislature sees a need to draw a distinction between the benefits that the member had before he or she left county employment and withdrew his or her retirement contributions and the benefits that the member is entitled to receive upon redeposit, it knows exactly how to do so. Moreover, if as the respondents contend section 31652
 
 *1519
 
 is addressed only to service credit, the provision regarding the applicable contribution rate would appear to be wholly misplaced in that subdivision.
 

 Our interpretation of section 31652 is further buttressed by the fact that the statute requires the redepositing member to redeposit “an amount equal to all of the accumulated normal contributions which he has withdrawn, plus regular interest thereon . . . .” (§ 31652(a).) The member must, therefore, redeposit at the higher tier I rates. Contrary to respondents’ position, we see no reason to presume that the Legislature intended the inequitable result of forcing a redepositing member to buy service credit at prices unrelated to the benefits to be received.
 
 (California School Employees Assn.
 
 v.
 
 Governing Board
 
 (1994) 8 Cal.4th 333, 340, 341 [33 Cal.Rptr.2d 109, 878 P.2d 1321] [construing statute to avoid unintended absurd and capricious results].) While the Legislature clearly intended to assist counties in controlling future pension costs in order to avert pending fiscal crises, there is nothing in the legislative history that indicates an intent to permit counties to “have their cake and eat it too” in this fashion.
 
 [7]
 
 Indeed, the rule of construction of pension statutes in favor of pensioners mandates otherwise.
 

 Given the language of the statute, we also find unpersuasive respondents’ reliance upon Attorney General Opinion 79-1107 (63 Ops.Cal.Atty.Gen. 320 (1980)). In that opinion, the Attorney General considered the question “[i]f a person, now over 35 years old, was formerly employed in a law enforcement position in a county sheriff’s department and was a safety member of the County Employees’ Retirement System . . . and then voluntarily resigned his position and withdrew his retirement contributions, may such person again become a safety member in the County Employees’ Retirement System?” In answering in the negative, the Attorney General opined that section 31652(a), did not provide a means to evade the age limitations found in section 31558. Among the Attorney General’s conclusions was that section 31652(a), is “not directed to determining the membership category of the returning employee. It is directed only to the calculation for retirement purposes of such employee’s credit for time in service.” (63 Ops.Cal.Atty.Gen.,
 
 supra,
 
 at p. 324). First, we observe that the Attorney General’s opinion is distinguishable on its facts, because it addressed return
 
 *1520
 
 to a membership category and the question before us is
 
 return to a membership tier within a membership category.
 
 Moving beyond this basic distinction, we find at least the portion of the opinion relevant here unpersuasive. In reaching its broad conclusion regarding the scope of section 31652(a) (which in any event does not appear necessary to support the result reached), the Attorney General essentially ignored the Legislature’s decision to word the statute in terms of “unbroken membership.” As previously noted, we must presume that the Legislature purposely employed this broader term (an assumption that is supported by the inequity that results if the term is simply equated to service credit) and give effect to the chosen language. This the Attorney General did not do.
 
 [8]
 

 At oral argument and in subsequent briefing, MCERA advanced for the first time the theory that the “unbroken membership” language of section 31652(a) is merely an anachronism the Legislature failed to repeal when the requirement of unbroken membership for obtaining prior service credit was repealed in 1959.
 
 [9]
 
 Therefore, MCERA argues the Attorney General opinion is indeed correctly reasoned. While MCERA’s interpretation of the statute is plausible, we are not persuaded that we should adopt it. Rather, we conclude that the rule of liberal construction in favor of the pensioner should prevail.
 

 First, the phrase in question has survived subsequent amendments to the statute in question and CERL as a whole. (See Historical Note, 35 West’s Ann. Gov. Code (1988 ed.) § 31652, pp. 245-246.) This fact argues against the view that the existence of the phrase is simply a legislative oversight.
 

 Second, in our view, the language of the section as a whole evidences an intent that a redepositing employee be placed back into his or her former
 

 
 *1521
 
 retirement tier. While it is true that the Legislature could not have specifically intended to address tier status prior to the time that tiers were authorized, the converse is also true: Until the time that tiers were instituted, the redepositing member was always returned to the same tier. This reality is reflected in the requirement that a redepositing member redeposit “an amount equal to all of the accumulated normal contributions which he has withdrawn, plus regular interest thereon from the date of separation from the retirement system.” (§ 31652(a).) Such a requirement is only consistent with an interpretation of the statute that permits a redepositing member to receive benefits commensurate with his or her contributions. Put another way, we find no reason to depart from the rule of liberal construction in this case and very good reason to adhere to it.
 
 [10]
 

 If the unbroken membership language of section 31652(a) is neither an anachronism nor solely a conduit for obtaining prior service credit, as MCERA alternatively contends, then MCERA’s interpretation of section 31483 makes little sense and serves to place the statutory provisions in conflict. On the other hand, appellants advance a reasonable view of the statutory language that permits each section to operate without impinging upon the other. Thus, section 31652 extends to returning MCERA members
 
 *1522
 
 the right to redeposit withdrawn contributions and have their membership treated as if unbroken, including return to a more favorable benefit tier. Section 31483 authorizes the county to establish a new retirement tier that does not include certain optional benefits. New members of MCERA and members who elect not to exercise their redeposit rights may be placed in this new tier. Appellants’ interpretation furthers our mandate to “ ‘construe every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.’ ”
 
 (Ford & Vlahos
 
 v.
 
 ITT Commercial Finance Corp., supra,
 
 8 Cal.4th at p. 1234, quoting
 
 Clean Air Constituency
 
 v.
 
 California State Air Resources Bd., supra,
 
 11 Cal.3d at p. 814.)
 

 This interpretation of section 31652 is consistent with our reading of section 31642, which addresses continuity of a member’s service. Appellants contend that the final paragraph of section 31642 extends unbroken service credit to all redepositing members. Respondents contend that this language merely modifies the factual situations set forth in the prior paragraph. We agree with appellants that in order to supply meaning to all of the language of the statute, the final paragraph must be interpreted as more than a modification of what precedes it.
 

 First, the absence of a letter designation before the final paragraph of section 31642 when the first paragraph does not bear one either, does not support respondents’ position. A commonly understood rule of our language is that paragraphs are intended to express separate thoughts. Following the logic of respondents’ reasoning, if the Legislature intended the final paragraph to simply modify what preceded it, the most appropriate course would have been not to indent it.
 

 Second, as all parties and the trial court correctly recognize, the final paragraph cannot modify subdivision (d) of section 31642. The deferred retirement referenced in that subdivision is triggered by a decision not to withdraw accumulated retirement contributions. Members who have made such a decision have nothing to redeposit. Therefore, we believe the more persuasive reading of statute is that the final paragraph was intended to apply to
 
 all
 
 redepositing members, whether referenced in the prior paragraphs or not.
 

 We conclude that section 31483 cannot be construed to permit respondents to apply its Resolution No. 80-179 so as to deny appellants reentrance to tier I. This is because, pursuant to section 31652(a), they are entitled to “unbroken membership” in MCERA based upon exercise of their redeposit
 
 *1523
 
 rights under that section. Accordingly, we need not reach the remainder of appellants’ claims.
 

 IV. Disposition
 

 We reverse the judgment. The trial court is directed to issue a peremptory writ of mandate directing the MCERA Board to reinstate appellants into the tier I membership plan of MCERA with all service credited to that plan.
 

 Kline, P. J., and Ruvolo, J., concurred.
 

 [1]
 

 All further statutory references are to the Government Code unless otherwise indicated.
 

 [2]
 

 Hereafter, statutory subdivisions will be referred to without the “subdivision” or “subd.” designation, e.g., section 31652, subdivision (a), will be designated simply as section 31652(a).
 

 [3]
 

 In summary, the distinctions between the two tiers are that tier I members at age fifty-five are entitled to: 1.984 percent for each year of service, rather than 1.492 percent; cost of living increases up to 4 percent, rather than 2 percent; choose, for purposes of computing final compensation, the highest year, rather than the average of any three years. They are also permitted to retire at age 50 with 10 years of service, rather than age 55. (§§ 31462, 31462.1, 31870, 31870.2)
 

 [4]
 

 The differences among appellants in employment history have no particular relevance to our decision on appeal and therefore will not be summarized herein. We note that Aquilino had by far the most prior service credit (16.75 years) when he left county employment. One other appellant had approximately 11 years of service credit, while the remaining appellants had 5 years or less of service credit.
 

 [5]
 

 The statute reads in full:
 

 “(a) Any member may redeposit in the retirement fund, prior to filing an application for retirement, by lump sum payment or by installment payments over a period of one year or for a longer time upon approval of the board, an amount equal to all of the accumulated normal contributions which he has withdrawn, plus regular interest thereon from the date of separation from the retirement system, and his membership is the same as if unbroken by such termination. Except as provided in this section his rate of contribution shall be based on age at the nearest birthday at time of reentrance into the system. If he does not redeposit all of the accumulated normal contributions previously withdrawn he shall be considered as a new member without credit for any previous service.
 

 “ ‘Regular interest’ as used in this section shall mean that amount of interest which would have been credited to the account of the member on the amount to be deposited at the interest rates established for the system if the contributions required by this section had been on deposit from the date of separation from the retirement system until the amount required to be deposited has been paid.
 

 “(b) Any member who left county service on or before December 31, 1971, and thereafter again became a member of the county system which he left and (1) who did not withdraw his accumulated normal contributions, or (2) who elected to leave his accumulated normal contributions on deposit pursuant to Article 9 (commencing with Section 31700), or (3) who redeposited or redeposits withdrawn accumulated normal contributions plus interest as authorized in this section, shall be eligible for all benefits granted a member entering a reciprocal retirement system under Article 15 (commencing with Section 31830), including the benefits
 
 *1514
 
 granted to members who left their accumulated contributions on deposit or who redeposited their accumulated contributions pursuant to Section 31831.1. This paragraph shall not be applicable to any member entering service after December 31, 1977.
 

 “(c) Any member who left county service on or after January 1, 1972, and who within 90 days thereafter again became a member of the county system which he left and (1) who did not withdraw his accumulated normal contributions, or (2) who elected to leave his accumulated normal contributions on deposit pursuant to Article 9 (commencing with Section 31700), or (3) who redeposits or redeposited his withdrawn accumulated normal contributions plus interest as authorized by Section 31652 within 180 days after leaving county service, shall be eligible for all benefits granted a member entering a reciprocal retirement system under Article 15 (commencing with Section 31830), except that Section 31831.1 shall not apply to such members.
 

 “(d) This section shall not apply to members who are retired or who are not in service of an employer making him a member of this system.”
 

 [6]
 

 Because respondents rely upon the structure of that statute in their interpretation of it, we set it forth in full:
 

 “The following shall not be considered as breaking the continuity of service:
 

 “(a) A temporary layoff because of illness or for purposes of economy, suspension, or dismissal, followed by reinstatement or reemployment within one year.
 

 “(b) A leave of absence followed by reinstatement or reemployment within one year after the termination of the leave of absence.
 

 “(c) A resignation to enter, followed by entrance into, the armed forces of the United States, followed by reemployment by the county or district within six months after the termination of such service.
 

 “(d) Resignation of a member who has elected in writing to come within the provisions of Article 9 [deferred retirement provisions] followed by reemployment before withdrawal of any accumulated contributions.
 

 “The withdrawal of accumulated contributions followed by the redeposit of the contributions upon re-entrance into service does not constitute a break in the continuity of service.”
 

 [7]
 

 The record contains legislative history relating to amendments to this section over time. The trial court and the parties paid particular attention to certain 1971 amendments that were intended to address certain inequities in contribution rates which arose when the Legislature extended reciprocal benefits to employees of all 1937 act plans. We find this legislative history of little direct assistance in determining the meaning of “unbroken membership," which was included in the original statute. We observe, however, that we find nothing inconsistent with our interpretation of the statute in the Legislature’s subsequent actions. (See
 
 People
 
 v.
 
 Pieters
 
 (1991) 52 Cal.3d 894, 902, fn. 5 [276 Cal.Rptr. 918, 802 P.2d 420].)
 

 [8]
 

 We further observe that the hypothetical employed by the Attorney General does not support his conclusion. The Attorney General evidently felt that his interpretation was required in order to prevent someone from returning to work in a pension status for which the employee was not qualified. According to the Attorney General, our interpretation of the statute would permit a former safety member who returned to work in a nonsafety clerical position to claim safety membership. We disagree. Section 31652 provides that a redepositing member’s break in service shall not affect the redepositing employee’s membership; it does not mean that other factors, such as age, which would affect the person’s membership regardless of whether the member had continued to be a county employee, shall not be taken into consideration in ascertaining the member’s status. Therefore, a redepositing safety member who returns to service in a nonsafety position would no more be entitled to safety membership than he or she would have been if they had remained in service and transferred into another position.
 

 [9]
 

 We generally look with disfavor upon a party’s raising a new theory for the first time at oral argument. However, because of the potential importance of the issue presented to us to the 20 CERL counties, we requested and accepted briefing from both parties on the new theory.
 

 [10]
 

 This court requested a second set of supplemental briefing following oral argument. In this second letter brief, respondents urged that the existence of section 31648.3 and other similar statutes supported the argument that the “unbroken membership” language of section 31652(a) was simply an anachronism. Section 31648.3 provides: “A member who is a full-time employee and returns within 12 months of the date of layoff to full-time service following a period of layoff commencing on or after January 1, 1981, but not to exceed 12 months, may receive service credit for the period of the absence, but not to exceed one year, upon the payment of the contributions that the member would have paid during that period, together with the interest that the contributions would have earned had they been on deposit, if the member was not absent. The contributions may be paid in lump sum or may be paid on a monthly basis for a period of not more than the length of the period for which service credit is claimed. The service credit provided by this section shall be provided only to persons who have returned to employment under the procedures of the employer for returning laid-off employees to work and shall not exceed one year of service credit for each layoff period. The decision of the member to redeposit withdrawn contributions shall be made within five years from the date the member is rehired or the effective date of the adoption by the county board of supervisors of this section. Upon completion of the redeposit with interest, the entry age of the member shall be adjusted to the original age of entry and membership is reestablished to that date. HQ This section shall not be operative in any county until such time as the board of supervisors shall, by resolution adopted by a majority vote, make this section applicable in the county.” Contrary to respondents’ argument, we conclude that, while there indeed may be some overlap between the two statutes, our interpretation of section 31652(a) would not render the last sentence of this statute superfluous as it provides the additional benefit of permitting a laid-off member who redeposits within the guidelines set forth in the statute to reclaim a more favorable entry age.
 

 We further note that we have reviewed the entirety of these additional letter briefs and find no need to address the remaining arguments in detail herein.