[No. D032381. Fourth Dist., Div. One. Mar. 17, 2000.]

SHARON LEAR et al., Plaintiffs and Respondents, v.
BOARD OF RETIREMENT OF THE SAN DIEGO COUNTY
EMPLOYEES RETIREMENT ASSOCIATION et al., Defendants and
Appellants.

**COUNSEL**

John J. Sansone, County Counsel, Diane Bardsley, Assistant County Counsel, and Miriam E. Brewster, Deputy County Counsel, for Defendants and Appellants.

James L. McBride, County Counsel (Ventura), and Lori A. Nemiroff, Assistant County Counsel, for the Ventura County Employees' Retirement Association and the County of Ventura as Amici Curiae on behalf of Defendants and Appellants.

Robert C. Fellmeth and Elisa D'Angelo for Plaintiffs and Respondents.

**OPINION**

**KREMER, P. J.**—Defendants Board of Retirement of the San Diego County Employees Retirement Association (SDCERA) and County of San Diego (San Diego) appeal a judgment mandating defendants to place plaintiffs Sharon Lear and Loren Mandel in a more favorable retirement tier. Seeking reversal, defendants contend plaintiffs were not statutorily entitled to placement in the more favorable retirement tier. We reverse the judgment.

I

INTRODUCTION

Under the authority of the County Employees Retirement Law of 1937 (CERL) (Gov. Code,[1] § 31450 et seq.), San Diego established SDCERA to provide employee retirement benefits. CERL grants certain reciprocal retirement benefits when a person formerly employed by a public entity with a retirement system established under CERL commences employment with another public entity also with a retirement system established under CERL. (§ 31830 et seq.)[2]

In 1966 plaintiffs began service with reciprocal counties other than San Diego and were members of those other counties' retirement systems.

In 1977 the Legislature amended CERL to permit counties to adopt less costly retirement systems for new employees. (§ 31483; *Aquilino v. Marin County Employees' Retirement Assn.* (1998) 60 Cal.App.4th 1509, 1511 [70 Cal.Rptr.2d 870] (*Aquilino*).)[3] As authorized by CERL as so amended, San Diego enacted an ordinance establishing a tier II status within SDCERA to provide new employees with less favorable retirement benefits than those granted under tier I. Later, after leaving their employment with the reciprocal counties, plaintiffs began working for San Diego and were placed in tier II of SDCERA for their San Diego service.

Seeking placement in tier I of SDCERA for their San Diego service, plaintiffs went by mandate to the superior court. Ruling for plaintiffs, the

---

[1] All statutory references are to the Government Code unless otherwise specified.

[2] Section 31830 provides: "The provisions of this article are intended to encourage career public service by granting reciprocal retirement benefits to members who are entitled to retirement rights or benefits from two or more retirement systems established under this chapter or from a retirement system established under this chapter and the Public Employees' Retirement System, and to delineate the financial obligations of each system and related political entity so that no system or political entity shall be liable for more than its just financial obligation."

[3] Section 31483, enacted under the 1977 amendment to CERL, provides: "Notwithstanding any other provision of law, whenever the governing body of a county or district has made a particular provision or provisions of this chapter applicable in such county or district through the adoption of an ordinance or resolution, such governing body may at any time thereafter adopt a further ordinance or resolution terminating the applicability of such provision or provisions as to employees of the county or district whose services commence after a given future date specified in the latter ordinance or resolution."

Section 31483 "clarified the authority of counties to establish tiers in their retirement plans." (*Aquilino, supra,* 60 Cal.App.4th at p. 1511.) "Without doubt, section 31483 was intended to clarify the authority of CERL counties to rescind for new employees more generous optional retirement benefits extended under CERL so that counties could reduce pension fund liabilities during the economic downturn of the late 1970's." (*Id.* at p. 1516.)

court granted mandate directing SDCERA and San Diego to place plaintiffs in tier I. However, concluding plaintiffs were not statutorily entitled to placement in tier I, we reverse the judgment.

## II

## FACTS

### A

*Plaintiff Lear*

In 1966 Lear was hired by the County of Ventura (Ventura).

In May 1985 Lear terminated her employment with Ventura.

In June 1985, without interruption, Lear began working for San Diego.

In July 1985 Lear became a member of SDCERA and was placed in tier II.

### B

*Plaintiff Mandel*

In 1966 Mandel was hired by the County of Los Angeles (Los Angeles).

In July 1989 Mandel terminated his Los Angeles employment and began employment with the County of San Joaquin (San Joaquin).

In November 1990 Mandel terminated his San Joaquin employment and, without interruption, was hired by San Diego.

In December 1990 Mandel became a member of SDCERA and was placed in tier II.

### C

*Plaintiffs' Requests for Tier I Status in SDCERA*

Under the retirement systems of the reciprocal counties for which they previously worked, plaintiffs Lear and Mandel were in a status with some similarity to SDCERA's tier I. When leaving such prior employment, plaintiffs kept their previous retirement contributions on deposit with the retirement systems of those reciprocal counties.

Plaintiff Lear's San Diego service was in reciprocity with her prior Ventura service. Similarly, plaintiff Mandel's San Diego service was in reciprocity with his prior Los Angeles and San Joaquin service. Such prior service with reciprocal counties entitled plaintiffs to certain CERL-specified reciprocal retirement benefits in SDCERA bearing on determination of their age at entry into SDCERA, calculation of their final compensation and application of their prior service for purposes of *qualification* for benefits and retirement allowances. (§§ 31833, 31835, 31836.)[4] However, plaintiffs' prospective monthly retirement benefits under tier II of SDCERA were less than under SDCERA's tier I. Hence, Lear in September 1995 and Mandel in February 1996 requested placement in tier I status in SDCERA. SDCERA and San Diego declined to act on plaintiffs' requests.

## III

### SUPERIOR COURT PROCEEDINGS

In December 1996 plaintiffs filed a petition seeking a peremptory writ of mandate against SDCERA and San Diego. (Code Civ. Proc., § 1085.)

In May 1997 plaintiffs filed an amended petition for mandate.

In February 1998 the matter came on for court trial. After trial, the court concluded SDCERA and San Diego abused their discretion (1) by assertedly not complying with CERL's reciprocity provisions and (2) by assertedly breaching their fiduciary duty to classify plaintiffs within tier I when plaintiffs were hired by San Diego for qualified reciprocal service. Based on

---

[4]Section 31833 provides: "For the purpose of this article and Articles 6 and 6.8 of this chapter, age at time of entrance into the retirement system for a person who enters within 90 days of last rendering service as a member of the Public Employees' Retirement System or another retirement system established under this chapter, and who retains his membership in such other system or systems, shall be his age at entry into the first such other system."

Section 31835 provides in relevant part: "The average compensation during any period of service as a member of the Public Employees' Retirement System or a member of a retirement system established under this chapter in another county shall be considered compensation earnable by a member for purposes of computing final compensation for such member provided: [¶] (1) The period intervening between active memberships in the respective systems does not exceed 90 days. . . . [¶] . . . [¶] (2) He retires concurrently under both systems and is credited with such period of service under such other system at the time of retirement."

Section 31836 provides: " 'Service,' solely for purposes of qualification for payment of benefits and retirement allowances, shall also include service as an employee of the state or a contracting agency under the Public Employees' Retirement System or of another county having a retirement system established under this chapter, if the compensation for such service constitutes compensation earnable by a member under Section 31835 of this part. [¶] No credit shall be granted in this retirement system for service for which the member has received credit in another retirement system or for which he is presently receiving a retirement allowance from another retirement system."

those conclusions, the court granted mandate directing SDCERA and San Diego to confer retroactive tier I status on plaintiffs upon plaintiffs' deposit of certain specified sums.

In September 1998 the superior court entered final judgment favoring plaintiffs against SDCERA and San Diego. SDCERA and San Diego appeal.

## IV

### DISCUSSION

Citing *Aquilino, supra*, 60 Cal.App.4th 1509, the trial court stated CERL's provisions "advance a legislative intent to take advantage of prior public investment in employees by encouraging transfer between reciprocal counties for mutual advantage." As we shall explain, the appellate court in *Aquilino* concluded that where former employee participants in a county's retirement system reentered employment with the same county and redeposited amounts equivalent to all withdrawn contributions, CERF expressly granted such redepositing employees unbroken membership in that county's retirement system for purposes of remaining in a favorable tier. (*Id.* at pp. 1519, 1522-1523.) Relying on *Aquilino*, plaintiffs contend they were similarly entitled to placement in tier I of SDCERA because their service with reciprocal entities governed by CERL was unbroken. However, although CERL's reciprocal provisions are expressly intended to "encourage career public service by granting reciprocal retirement benefits to members who are entitled to retirement rights or benefits from two or more retirement systems" established under CERL, such statutory provisions are also expressly intended to "delineate the financial obligations of each system and related political entity so that no system or political entity shall be liable for more than its just financial obligation." (§ 31830.) Thus, to implement a balance between those dual purposes, the Legislature has specified in CERL only limited reciprocal retirement benefits. (See *Piombo v. Board of Retirement* (1989) 214 Cal.App.3d 329, 336 [262 Cal.Rptr. 624].) Further, unlike the situation here, *Aquilino* did not involve any issue of reciprocal retirement benefits. Hence, plaintiffs' reliance on *Aquilino* is unavailing. Moreover, plaintiffs have not otherwise established any statutory entitlement to placement in SDCERA's tier I status.

### A

### *Standard of Review*

The issue before us is whether plaintiffs are statutorily entitled under CERL to placement within SDCERA's tier I status. The proper interpretation

of CERL, particularly the interplay between its provisions authorizing benefit tiers and those bearing on reciprocity benefits, is a question of law subject to independent review on appeal. (See *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 544 [35 Cal.Rptr.2d 574].)

"Our task, thus, is to ' "ascertain the intent of the Legislature so as to effectuate the purpose of the law." [Citation.] In determining that intent, we first examine the words of the respective statutes: "If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' [Citation.] 'Where the statute is clear, courts will not "interpret away clear language in favor of an ambiguity that does not exist." [Citation.]" ' [Citation.] If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] "We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' [Citation.] '[T]he courts "should construe every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' [Citations.] 'Any ambiguity or uncertainty in the meaning of pension legislation must be resolved in favor of the pensioner, but such construction must be consistent with the clear language and purpose of the statute. [Citations.]' " (*Aquilino, supra,* 60 Cal.App.4th at p. 1516; see also *Ford & Vlahos v. ITT Commercial Finance Corp.* (1994) 8 Cal.4th 1220, 1234 [36 Cal.Rptr.2d 464, 885 P.2d 877].)

B

*Analysis*

As noted, CERL provides for certain specified reciprocal retirement benefits when a person formerly employed by one reciprocal public entity commences employment with another reciprocal public entity. (§ 31830 et seq.) However, those limited statutorily specified reciprocal retirement benefits involve only determination of the reciprocal employee's age upon entry into the second reciprocal entity's retirement system (§ 31833), computation of the final compensation for the reciprocal employee (§ 31835), and calculation of the reciprocal employee's service "solely for purposes of *qualification for payment* of benefits and retirement allowances" (§ 31836, italics added). Nothing in the portions of CERL delineating specific reciprocal retirement benefits indicates that a former employee of one reciprocal county who had tier I status in such county's retirement system is statutorily entitled

to tier I status in the retirement system of another reciprocal county upon such person's immediate subsequent hire by such second county.[5]

In *Aquilino, supra,* 60 Cal.App.4th 1509, the plaintiffs "were originally employed prior to the establishment of tiers in Marin County, were members of the retirement plan [(MCERA)], left employment, withdrew their accumulated retirement contributions, were subsequently reemployed after the establishment of the tiers, redeposited their retirement contributions pursuant to section 31652, subdivision (a) and requested readmission to the more favorable retirement tier." (*Id.* at p. 1512, fn. omitted; see also § 31642.)[6] In *Aquilino,* the parties disputed whether those redepositing employees were entitled to reenter tier I or were required to remain in tier II. (*Aquilino, supra,* at p. 1514.) Confronted with assessing how the *Aquilino* plaintiffs' " 'redeposit rights' " were impacted by section 31483's provisions authorizing counties to establish retirement plan tiers, the appellate court concluded "such redepositing employees must be returned to the more favorable tier of the Marin County plan . . . ." (*Aquilino, supra,* at pp. 1511-1512.) In so concluding the *Aquilino* plaintiffs were entitled to reenter tier I, the appellate court stated that ". . . section 31652 extends to returning MCERA members the right to redeposit withdrawn contributions and have their membership treated as if unbroken, including return to a more favorable benefit tier. Section 31483 authorizes the county to establish a new retirement tier that

---

[5]Indeed, CERL itself recognizes the limited scope of the specific reciprocal retirement benefits it confers. As noted, although authorizing favorable treatment of a person's prior service with another reciprocal public entity for the limited purpose of *qualification* for payment of benefits and retirement allowances, section 31836 expressly provides that no credit shall be granted in a retirement system "for service for which the member has received credit in another retirement system or for which he is presently receiving a retirement allowance from another retirement system."

[6]Section 31652, subdivision (a) provides in relevant part: "Any member may redeposit in the retirement fund, prior to filing an application for retirement, by lump sum payment or by installment payments over a period of one year or for a longer time upon approval of the board, an amount equal to all of the accumulated normal contributions which he has withdrawn, plus regular interest thereon from the date of separation from the retirement system, and his membership is the same as if unbroken by such termination. . . . If he does not redeposit all of the accumulated normal contributions previously withdrawn he shall be considered as a new member without credit for any previous service."

Section 31642 provides: "The following shall not be considered as breaking the continuity of service: [¶] (a) A temporary layoff because of illness or for purposes of economy, suspension, or dismissal, followed by reinstatement or re-employment within one year. [¶] (b) A leave of absence followed by reinstatement or re-employment within one year after the termination of the leave of absence. [¶] (c) A resignation to enter, followed by entrance into, the armed forces of the United States, followed by re-employment by the county or district within six months after the termination of such service. [¶] (d) Resignation of a member who has elected in writing to come within the provisions of Article 9 followed by re-employment before withdrawal of any accumulated contributions. [¶] The withdrawal of accumulated contributions followed by the redeposit of the contributions upon re-entrance into service does not constitute a break in the continuity of service."

does not include certain optional benefits. New members of MCERA and members who elect not to exercise their redeposit rights may be placed in this new tier." (*Id.* at pp. 1521-1522.) Finally, the appellate court characterized its statutory interpretation as furthering "our mandate to ' "construe every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' " (*Id.* at p. 1522.)

In sum, in *Aquilino, supra,* 60 Cal.App.4th 1509, the appellate court concluded the Legislature had provided by statute (§§ 31642, 31652) that former employees of a county who had tier I status in such county's retirement system must be placed in tier I status when they redeposit certain sums upon their reentry into employment with that same county. (*Aquilino, supra,* at pp. 1511-1512, 1521-1522.) However, although the Legislature might properly provide that former employees of reciprocal counties who had enjoyed tier I status under those counties' retirement systems and who had left their contributions in such systems are similarly entitled to placement in tier I status in the retirement system of another county when newly hired by such other county, the Legislature has not chosen to do so. (Cf. *Aquilino, supra,* at p. 1518.) In that vein, the appellate court in *Aquilino* observed that "when the Legislature sees a need to draw a distinction between the benefits that the member had before he or she left county employment and withdrew his or her retirement contributions and the benefits that the member is entitled to receive upon redeposit, it knows exactly how to do so." (*Ibid.*; see also *Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 492 [66 Cal.Rptr.2d 304, 940 P.2d 891];[7] *Piombo v. Board of Retirement, supra,* 214 Cal.App.3d at p. 336.) Further, as noted, in *Aquilino* the appellate court expressly stated that *new* members of a county's retirement system created under CERL could properly be placed in a less favorable tier established under section 31483. (*Aquilino, supra,* at p. 1522.) Here, although plaintiffs Lear and Mandel were former employees of reciprocal counties and members of those counties' retirement systems, such plaintiffs first became San Diego employees and new members of SDCERA after its tier II took effect. Thus, San Diego could properly place Lear and Mandel in SDCERA's tier II. (*Ibid.*)

## C

### *Estoppel*

In their respondents' brief and at oral argument, plaintiffs contended defendants SDCERA and San Diego should be estopped to deny plaintiffs'

---

[7]Our function in "construing a statute 'is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted . . . .'" (*Ventura County Deputy Sheriffs' Assn. v. Board of Retirement, supra,* 16 Cal.4th at p. 492.)

requests for tier I status in SDCERA because, as the trial court found, until 1993-1994 plaintiffs were not informed they had been placed in tier II upon hire by San Diego. However, although plaintiffs proceeded in the trial court on the theory that this lawsuit was not time-barred because before 1993-1994 they were unaware of tier differences, nothing in the record indicates that plaintiffs argued to the trial court that defendants should be estopped from defending on the *merits* against plaintiffs' claim of entitlement to tier I status. Further, the record contains no evidence to justify a finding of estoppel on the merits.

 "To invoke equitable estoppel (1) the party to be estopped must be apprised of the facts; (2) he must intend his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) *he must rely upon the conduct to his injury.*" (*Barrett v. Stanislaus County Employees Retirement Assn.* (1987) 189 Cal.App.3d 1593, 1607 [234 Cal.Rptr. 900], italics added.)

Plaintiffs' first amended petition for writ of mandate did not expressly mention estoppel. Instead, such pleading simply alleged that plaintiffs were "familiar with [t]ier I benefits," "assumed" employment with San Diego under the terms and conditions of tier I, and "were not informed that they would be relegated to [t]ier II" of San Diego's retirement system. Further, although plaintiffs also pleaded that their "disqualification" from tier I status occurred contrary to "representations made by" defendants as set forth in an exhibit incorporated into the first amended petition, such exhibit's only two references to tiers contained nothing suggesting defendants told plaintiffs they would be placed in tier I status. Thus, plaintiffs' pleadings did not raise the issue of estoppel on the merits.

In responding to defense interrogatories inquiring if plaintiffs had asked what tier I status they would be in when deciding whether to take their positions with San Diego, both plaintiffs stated they "trusted" defendants to "make the correct decision in my interest and pursuant to law." Further, in responding to a defense interrogatory asking for a detailed statement of all facts supporting plaintiffs' amended petition's allegation that plaintiffs were not informed they would be relegated to tier II of SDCERA, plaintiffs stated San Diego did not inform them of anything "relevant to retirement tiers or alternative plans" at the times they were hired. Nothing in those discovery responses invoked a theory of estoppel on the merits.

Plaintiffs' trial brief argued this litigation was not time-barred since the statute of limitations was assertedly tolled by defendants' "continuing violation" and deliberate concealment of tier status that rendered plaintiffs

unaware of the difference between the two tier's contribution rates. However, plaintiffs' trial brief made no claim that defendants should be estopped to defend against the merits of plaintiffs' claim of entitlement to tier I status. Similarly, at the superior court hearing on plaintiffs' writ petition, the parties debated the defense of laches. However, the transcript of such hearing contains no mention by plaintiffs' counsel of the theory of estoppel on the merits.

Although not expressly mentioning estoppel, the court's ultimate statement of decision found the three-year limitations statute applicable to plaintiffs' claims was tolled by concealment because defendants' alleged "abuse of discretion" was "continuous in nature." Further, in rejecting the defense claim this litigation was time-barred, the statement of decision also concluded that plaintiffs had relied on defendants by trusting defendants' expertise in retirement law and applicable procedure. However, the statement of decision contained no reference to the theory of estoppel on the merits.[8]

Finally, plaintiffs did not make any evidentiary showing they detrimentally relied upon any asserted misrepresentation about retirement tiers made by defendants before plaintiffs accepted employment with San Diego. (*Barrett v. Stanislaus County Employees Retirement Assn., supra,* 189 Cal.App.3d at p. 1607.) Indeed, during discovery plaintiffs admitted that before accepting their positions with San Diego, plaintiffs never inquired about the level of retirement benefits San Diego offered.

In sum, plaintiffs' pleadings, interrogatory responses and trial brief contained scattered assertions about their lack of knowledge of their placement in tier II. Consistent with those assertions, the trial court found in rejecting the defense of laches/statute of limitations that defendants had delayed in making disclosures to plaintiffs about their tier status. However, the record contains no indication the theory of estoppel on the merits was ever raised. Further, the record lacks any evidentiary support for such theory.

## D

### Conclusion

Neither CERL nor any other statute identified by plaintiffs grants a former employee of one reciprocal county who had a favorable tier status in that

---

[8]Indeed, in its statement of decision the court found defendants had "contended up to and including the day of trial" that plaintiffs "were properly classified in [t]ier II and their placement in [t]ier I would be unlawful." Such finding could reasonably be interpreted as an implicit rejection of any theory that defendants at some point made representations to the contrary.

county's retirement system the right to placement in a similarly favorable tier in a separate retirement system maintained by a separate reciprocal county by which such employee is later hired. Further, defendants were not estopped to defend this litigation on the merits. Hence, given the absence of any statutory authority requiring plaintiffs' placement in tier I status under SDCERA, the superior court erred in granting plaintiffs' petition for writ of mandate.

## V

### DISPOSITION

The judgment is reversed. The parties shall bear their own costs on appeal.

Benke, J., and Haller, J., concurred.

A petition for a rehearing was denied April 5, 2000, and respondents' petition for review by the Supreme Court was denied June 14, 2000. Mosk, J., was of the opinion that the petition should be granted.