54 Cal.App.4th 848 (1997)
In re ALEXIS M., a Person Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent,
v.
CHRISTOPHER M., Defendant and Appellant;
WENDY S., Intervener and Respondent.
Docket No. G019950.
Court of Appeals of California, Fourth District, Division Three.
March 28, 1997.
*849 COUNSEL
Steven D. Schatz, under appointment by the Court of Appeal, for Defendant and Appellant.
Laurence M. Watson, County Counsel, and Dana J. Stits, Deputy County Counsel, for Plaintiff and Respondent.
Carolyn L. Silva for Intervener and Respondent.
Harold LaFlamme and Linda M. O'Neil for Minor.
*850 OPINION
SILLS, P.J.
After this appeal was filed, the appellant, Christopher M., was convicted of felony child abuse arising out of the death of a four-month-old child. (See Pen. Code, § 273a, subd. (a).) Christopher is now serving a six-year term in Wasco state prison.
In particular, Christopher's conviction arose out of the January 1994 death of four-month-old Alexander M., who, if he had lived, would have been the elder brother of Alexis M., who was born in September 1994. Christopher was arrested for child abuse on November 16, 1994, two months after the birth of Alexis, and was convicted in September 1996. A petition to declare Alexis a dependent of the juvenile court was filed the day of the arrest. Christopher pled no contest to the allegations in the petition, which were based on the death of Alexander.
Christopher filed this appeal from orders made at a six-month review completed in May 1996, arguing that the juvenile court should have found him to be a presumed father at the dispositional hearing in September 1995 and therefore entitled to reunification services. Christopher was accorded presumed father status in March of 1996 and given reunification services then, but the services were terminated again in November 1996, when the juvenile court found, at a 12-month review, that reunification would be detrimental to Alexis. While Christopher had been convicted of felony child abuse arising out of the death of Alexander by November 1996, that fact was not one of the bases of the trial court's decision. (1) After learning of the conviction, this court specifically requested supplemental briefing on the question of whether Christopher's appeal should not be dismissed as moot, or the judgment otherwise affirmed, because of it.
Welfare and Institutions Code section 361.5, subdivision (b)(4) stated, at the time of Christopher's conviction, that reunification services "need not" be provided a parent who "has been convicted of causing the death of another child through abuse or neglect." Changes in the statute effective January 1, 1997, make the law even less favorable to Christopher. There is no longer the requirement of a conviction  simply a finding by clear and convincing evidence that the parent has "caused" the death of another minor.[1]
There is no dispute that very serious acts of abuse perpetrated within the home occurred in this case, resulting in the death of a child. Such abuse is *851 simply too shocking to ignore when the dispositive legal problem is whether the offending parent should have been offered services aimed at a reunification with the surviving child. Indeed, given the gravity and nature of the crime involved here  felony child abuse resulting in death of a small infant  the idea of reunification with another infant must be considered as bordering on the frivolous. (See § 361.5, subd. (b)(4); cf. In re Geoffrey G. (1979) 98 Cal. App.3d 412, 423 [159 Cal. Rptr. 460] [conviction of voluntary manslaughter arising out of killing of spouse was "of such a nature as to prove" father's "unfitness to have the future care and control of his son"].)[2]
*852 In Justice Crosby's opinion for this court in In re Andrew B. (1995) 40 Cal. App.4th 825, 858, footnote 25 [47 Cal. Rptr.2d 604], there is a collection of cases where juvenile dependency appellants took positions which were palpably untenable. One of those positions was described as: "... a birth father who is currently incarcerated for murdering a child and has a conceded mental disability that renders him incapable of utilizing reunification services may not be denied those services unless the juvenile court makes an additional finding under Welfare and Institutions Code section 361.5, subdivision (e), supported by clear and convincing evidence, that the services would be detrimental to the minor." In other words, somebody took the position that the murderer of a child was still entitled to reunification unless there was a technical reference by the trial court to section 361.5. Christopher's argument that his conviction for felony child abuse does not moot this appeal because section 361.5 was not the basis of the juvenile court's ruling is only a hair removed from the argument condemned in Andrew B.[3]
In the context of the specific facts of this case, Christopher's position is nothing less than surreal. Courts do not exist to explore theoretical possibilities unremoved from concrete cases. His arguments are irrelevant to the issue before us, which is whether reunification would be detrimental to Alexis. The removal of Alexis here arose out of the very incident which gave rise to the felony conviction, and Christopher did not contest the allegations in the petition.[4] Under such facts, we are willing to go so far as to say that *853 it would have been, in the wake of the conviction, an abuse of the juvenile court's discretion to have offered Christopher reunification services.[5]
Our statement in In re Brittany S. (1993) 17 Cal. App.4th 1399, 1402 [22 Cal. Rptr.2d 50], about the inappropriateness of "go to prison, lose your child" obviously does not apply in cases where the very reason a parent is in prison in the first place is the death of another child from child abuse, particularly an infant sibling. (§ 361.5, subd. (b).)
The appeal is dismissed as moot.
Crosby, J., and Sonenshine, J., concurred.
A petition for a rehearing was denied April 28, 1997, and appellant's petition for review by the Supreme Court was denied June 18, 1997.
NOTES
[1] Section 361.5, subdivision (b)(4) now reads: "Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] ... [¶] (4) That the parent or guardian of the minor has caused the death of another minor through abuse or neglect." All statutory references to section 361.5 are to the Welfare and Institutions Code.
[2] In his supplemental letter brief, Christopher argued that section 361.5 simply is not relevant to this case, since no decision had been made by the trial court pursuant to the statute. He also emphasized the discretionary nature of the statutory language ("need not" rather than "shall not"). We reject both arguments because they implicitly trivialize a child's death. The fact of a death and a subsequent petition for felony child abuse arising out of that death simply obliterates almost any possibility of reunification, even if the Legislature did leave a tiny crack open by using the words "need not" instead of "shall not."

In a petition for rehearing made after we initially filed this opinion, Christopher then took issue with the characterization that he "caused" the death of Alexander, and asked us, in that regard, to take judicial notice of the record in the criminal proceeding, which we have. He argues that the evidence in the criminal proceeding was insufficient to determine the cause of death, and that he never actually admitted to causing the death in the dependency proceeding  merely to pleading no contest to a petition that a child died in his care.
If Christopher fears that characterizing him in the juvenile proceeding as having "caused" the death of Alexander will collaterally estop him in the criminal proceeding, he need not worry. Because the two proceedings have different burdens of proof, with the burden being more stringent in the criminal proceeding, Christopher will not be collaterally estopped from contending, in the criminal appeal, that the evidence was insufficient. (In re Nathaniel P. (1989) 211 Cal. App.3d 660, 670 [259 Cal. Rptr. 555]; cf. People v. Sims (1982) 32 Cal.3d 468, 485 [186 Cal. Rptr. 77, 651 P.2d 321] [because county's burden of proof in administrative proceeding was less than burden in subsequent criminal prosecution, county's failure to show fraud in the administrative proceeding would, "a fortiori," decide issue in the criminal proceeding].)
As to the merits of Christopher's belated causation argument in the context of this juvenile proceeding, the requested judicial notice of the appellate record only confirms the accuracy of our characterization. We need look no further than the summary of evidence at the preliminary hearing contained in Christopher's own motion to strike murder and assault charges. Here are excerpts from Christopher's moving papers: "It is consistent with Dr. Halka's opinion that there was a good possibility that the baby's death was attributable to child abuse.... In this case, there is evidence of repeated trauma over a period of time in various parts of the body.... [¶] Dr. Halka's findings also were consistent with the infant being shaken and then laid face down so that his air supply was cut off.... [¶] Dr. Halka considered it a distinct possibility that the child was killed as a result of shaking.... [¶] Tina told Marilyn that she saw Mr. M[.] pick up the baby and shake Cole [also known as Alexander] on a couple of occasions. The baby was crying while being shaken. Mr. M[.] shook the baby several times to keep him from crying.... [¶] Mr. M[.] had demonstrated to Sherry how he would shake Cole. Mr. M[.] would pick Cole up under the arms and slam him up and down. Sherry told Mr. M[.] that he could kill the baby doing that. Mr. M[.] responded that he just gets upset and frustrated with Cole's crying, and that is why he shakes the infant.... [¶] On January 31, 1994, a phone conversation was taped between Sherry and [Christopher]. In that conversation, Mr. M[.] said `I shook the baby, I don't deny that.' Mr. M[.] also said that at times he cussed at the infant and that he had dropped Cole one night when got up to feed the baby. Mr. M[.] said that he did not tell anyone about it, and that the infant may have been hurt because of broken ribs. Mr. M[.] had said, `Goddam it, I dropped that son of a bitch.' ... Mr. M[.] said that when he got frustrated with the baby, he lifted Cole over his head and shook him back and forth. When the baby cried, he said `What's the fuck's a matter with you?'"
Christopher's "causation" argument, as made in the criminal proceeding and reiterated in his petition for rehearing here, rests on the idea that because it is was very hard to pinpoint the precise cause of his son's death  even though the child was admittedly abused during his short lifetime  that death therefore should be ascribed to sudden infant death syndrome. Whatever the merits of this argument for the criminal appeal yet ahead, it does nothing to undermine applicability of section 361.5 in the juvenile case: A child died; a juvenile dependency petition was filed arising out of that death; and a parent was tried and convicted of felony child abuse based on that death. Under such circumstances, it would absolutely defy common sense for us to say anything else but that Christopher caused the death of Alexander.
[3] While the author of this opinion dissented in In re Andrew B. and the other member of this panel signed In re Kayla G. (1995) 40 Cal. App.4th 878 [47 Cal. Rptr.2d 86], which took a position opposite that of Andrew B. on the question of Wende review, this panel is united on the point made in footnote 25 of Andrew B.: Too many arguments in juvenile dependency appeals are being made just to be made.
[4] Christopher lays great stress on the fact the words "the minor's sibling was physically abused which caused her [sic] death" were crossed out in favor of amended language which merely admitted to the fact of death while in his care and custody. For purposes of our analysis in this dependency case, that is a distinction without a difference. The only reasonable inference that can be drawn is that Christopher was morally culpable in some way for the death, particularly in light of the evidence in the criminal case that the dead child had been the object of repeated abuse. Consequently, the possibility of a miscarriage of justice in the juvenile court occurring because the criminal court convicted an innocent person need not concern us here. A much harder case would be presented where a parent actually contested a jurisdictional petition based on the death of another child, claiming to be morally innocent of that death.
[5] Accordingly, Christopher's argument that section 361.5, subdivision (b) necessarily entails development at the trial level and therefore cannot moot an appeal when there is a conviction for felony child abuse arising out of the death of a child is unpersuasive. It is only common sense that the times when a parent commits felony child abuse, and an infant dies, and the parent should still be offered reunification services regarding the surviving children are going to be extremely rare. The enormity of a death arising out of felony child abuse swallows up almost all, if not all, competing concerns. And, while the Legislature's wording may allow for some theoretical case where a parent can be convicted of felony child abuse arising out the death of a child and still be accorded reunification services, this case isn't it.