[No. D048038. Fourth Dist., Div. One. June 7, 2007.]

SAN DIEGO COUNTY EMPLOYEES RETIREMENT ASSOCIATION, Plaintiff and Respondent, v.
COUNTY OF SAN DIEGO, Defendant and Appellant;
ROBERT P. HICKEY et al., Interveners and Respondents.

COUNSEL

John J. Sansone, County Counsel, William A. Johnson, Jr., and William H. Songer, Deputy County Counsel, for Defendant and Appellant.

Crowell & Moring and Steven P. Rice for Plaintiff and Respondent.

Law Offices of Michael A. Conger, Michael A. Conger; Law Offices of Richard H. Benes and Richard E. Benes for Interveners and Respondents.

OPINION

HALLER, Acting P. J.—The County of San Diego (County) adopted a resolution providing higher pension benefits (referred to as Tier A) for all County employees, but permitting a retroactive increase to Tier A only for those individuals employed on the effective date of the resolution, March 8, 2002. The San Diego County Employees Retirement Association (Retirement Association) challenged this resolution on behalf of two groups of employees

who were not employed on March 8, 2002: (1) individuals who were employed before March 8, 2002, then left County employment without withdrawing their retirement contributions, and later returned to County employment after March 8, 2002; and (2) individuals who were employed before March 8, 2002, then left employment and withdrew their retirement contributions from the system, and later returned to County employment after March 8, 2002, and redeposited their retirement contributions with interest. The Retirement Association alleged the County Employees Retirement Law of 1937 (CERL) precluded the County from excluding these employees from a retroactive Tier A pension benefit increase. (Gov. Code,[1] § 31450 et seq.) Two returning County employees intervened in the action.

After the parties filed cross-summary-judgment motions, the court granted the Retirement Association's summary judgment motion and denied the County's motion. The court entered judgment ordering the County to calculate pension benefits for the two groups of returning employees at the highest level (Tier A) for their entire period of eligible service, both before and after March 8, 2002.

The County appeals. We reverse the judgment and order the court to enter a summary judgment in County's favor. At the time the County enacted the challenged resolution, state law did not prohibit counties from providing a retroactive pension benefit increase only to individuals who were employees on a particular date, and the County was not required to extend this retroactive benefit to returning employees.

## FACTUAL AND PROCEDURAL BACKGROUND

The County employee retirement system is governed by CERL, a comprehensive statutory scheme that guides the manner in which a county may provide retirement benefits to its employees. (§ 31450 et seq.) The Retirement Association is an independent entity administering the County's retirement system. (§ 31550.) Employees generally become members of the association in the first month after they begin employment. (§ 31552.) Members are classified as either safety members or general members. (See §§ 31469.3, 31470.) In this case, we are concerned only with general members, and all references to members are intended to include only those individuals.

Under CERL, members of the Retirement Association include: (1) current employees; (2) former employees who left their retirement contributions in the County account and elected a deferred retirement; and (3) those individuals who have retired and are drawing retirement benefits. (See § 31470.)

---

[1] All further statutory references are to the Government Code.

When an employee leaves County employment and withdraws his or her contributions, the employee's membership terminates. (*Dodosh v. County of Orange* (1981) 127 Cal.App.3d 936, 938 [179 Cal.Rptr. 804].) If subsequently reemployed by the county, a former member may redeposit withdrawn retirement contributions with interest and resume membership "as if unbroken" in the retirement association. (§ 31652, subd. (a).)

CERL sets forth several levels of retirement allowances that may be offered to County employees upon retirement. A county has the discretion to decide which statutory benefit level will be provided to its retirement system members. (§§ 31676.1–31676.19.) Each of the levels is contained in a separate code section that includes a list of retirement ages with corresponding fractions, and describes the manner in which an employee's retirement allowance is to be calculated. (*Ibid.*) With respect to each statutory benefit level, a retiring employee's pension benefit depends on the statutory fraction amount along with the employee's retirement age, years of qualified service, and highest annual salary. (*Ibid.*) These retirement benefits are generally funded by county and employee contributions to the retirement fund. (§ 31453.5.)

Before 1977, the County (like most other counties) provided the same level of retirement benefits to all of its employees. However, in 1977, the Legislature amended CERL to clarify that counties may offer lower benefits to new employees. (§ 31483; see *Lear v. Board of Retirement* (2000) 79 Cal.App.4th 427, 430 [94 Cal.Rptr.2d 89]; *Aquilino v. Marin County Employees' Retirement Assn.* (1998) 60 Cal.App.4th 1509, 1516 [70 Cal.Rptr.2d 870] (*Aquilino*).) Pursuant to section 31483, in 1978 the County enacted an ordinance providing for two benefit tiers for general members. Those who were employed before October 1978 were eligible for "Tier I" retirement benefits at the level designated in section 31676.12. All employees hired after that date were eligible for lower "Tier II" benefits at the level designated in section 31676.1.

In February 2002, the County Board of Supervisors adopted resolution No. 2-44 providing for a different—and generally higher—pension benefit level (Tier A) for all employees. This new level was contained in section 31676.17, and represented the highest level of statutory benefits then permitted under CERL.[2] Resolution No. 2-44 provides: (1) all individuals employed by the County on March 8, 2002, are entitled to the Tier A enhanced retirement allowance for all service credit earned before and after March 8,

---

[2] These benefits authorized an eligible general member who retires at age 60 or older to receive a pension equal to 3 percent of the member's final compensation for each year of service, not to exceed final compensation. The statute also set forth a graduated schedule for calculation of the pension for members who retire at ages 50 through 59.

2002, unless the employee opts out within a specified time period; (2) persons who were not employed on March 8, 2002, are entitled to Tier A benefits only prospectively and do not receive Tier A benefits for any prior service; and (3) the former Tier II level is eliminated (retroactively and prospectively) for all employees.[3] Thus, for any rehired individual not employed on March 8, 2002, who had prior service credit at Tier II and who deferred or redeposited retirement contributions, the rehired employee would receive a retroactive increase to Tier I level for the prior service, and would receive Tier A for all post-March 8, 2002 employment.

In connection with its collective bargaining agreements, the County agreed to pay the full cost of the increased contributions for the retroactive benefit increases needed to fund the system at the increased Tier A or Tier I level. With respect to the prospective benefit increases, each employee would pay the appropriate higher contribution level.

It is undisputed that in enacting resolution No. 2-44, the County expressly intended to exclude a retroactive pension increase to Tier A for those employees who had worked for the County before March 8, 2002, left employment, and then were later rehired. The purpose of this exclusion was to control County pension costs.

After resolution No. 2-44 was enacted, each of the returning employees who had deferred their retirement contributions or repaid the contributions, received a retroactive pension increase from Tier II to Tier I without having to pay for the cost of this increased benefit, and these employees were on notice before the reemployment that he or she would not receive the benefit of the retroactive Tier A pension increase if the first day of reemployment was after March 8, 2002. However, one returning County employee complained and asserted a right to receive a retroactive increase to Tier A (in addition to receiving the Tier A prospective benefit increase). In response, the Retirement Association's board requested the County to amend resolution No. 2-44 to permit the association to treat returning employees the same as those who were County employees on March 8, 2002, for purposes of pension benefit levels. The Retirement Association asserted that resolution No. 2-44 violated CERL to the extent it did not provide retroactive pension increases for returning employees. The County disagreed, and refused to amend the resolution.

In April 2005, the Retirement Association filed a declaratory relief action against the County on behalf of two groups of general members rehired

---

[3] In summarizing the relevant terms of resolution No. 2-44, we recognize that the resolution, as written, was not a model of clarity. However, the parties here agree on the meaning and intent of the relevant terms, and thus we adhere to this agreed meaning for purposes of this appeal.

after March 8, 2002: (1) persons who left County employment before March 8, 2002, withdrew their retirement contributions, but thereafter returned to County employment and redeposited their contributions with interest (Redepositors); and (2) persons who left County employment before March 8, 2002, but left their retirement contributions in the County retirement system, and then returned to County employment (Returning Deferreds).

The Retirement Association sought "a declaration that Returning Deferreds and Redepositors are entitled to . . . a retirement allowance based on Tier A benefits for such members' entire period of eligible service, including pre-March 8, 2002 service." Two returning County employees, Robert P. Hickey and Glenn Still, intervened in the action. They sought a judicial declaration that their retirement benefits for their prior and future service should be calculated at the Tier A level.

In moving for summary judgment, the Retirement Association argued CERL precluded the County from treating these returning employees differently from employees who never left. In support, the Retirement Association relied on two CERL provisions that set forth certain rights of returning employees pertaining to retirement benefits: section 31642[4] and section 31652, subdivision (a),[5] and a Court of Appeal decision interpreting the latter code section, *Aquilino, supra*, 60 Cal.App.4th 1509.

The Retirement Association also supported its summary judgment motion with evidence of the estimated cost of providing retroactive Tier A benefits to those who went on deferred status or withdrew their contributions before March 8, 2002, and then were reemployed. This evidence showed the cost of this increase would be a small percentage of the overall cost of providing the Tier A benefits to all employees. The Retirement Association also presented evidence relating to the prior opinions of county counsel when it represented the Retirement Association. Because the cost evidence and opinion evidence are not relevant to the statutory interpretation issues before us, we do not discuss this evidence.

In opposing the Retirement Association's motion and bringing its own summary judgment motion, the County argued that it had the authority under CERL to provide retroactive benefits only to certain employees, and the statutes relied on by the Retirement Association did not support the association's argument. The County also urged the court to enforce the resolution as written because it was the result of negotiations with its labor unions, which

---

[4] See footnote 10, *post.*

[5] See footnote 11, *post.*

binds the Redepositors and Returning Deferreds. In support, the County produced copies of the written agreements with its various employee unions, which were consistent with resolution No. 2-44 (although they did not expressly address the returning employee issue) and required the County to bear the costs of the retroactive pension increases. The County also produced the declaration of Bob Baker, a member of the bargaining team for the County's largest employee union, who stated that returning employees are bound by collective bargaining agreements, and "[t]he status of [returning] deferred . . . members was specifically discussed during the collective bargaining process. It was very clear at the bargaining table that the Tier A benefits would only apply prospectively [to these members]. In other words, members who were not employed as of the effective date would not be eligible to receive Tier A credit for past service. . . ." The County also submitted a declaration of its labor relations manager, who described a similar understanding during the labor negotiations.

The trial court initially issued a tentative ruling in favor of the County. However, after a lengthy oral argument and considering the parties' supplemental submissions, the court granted summary judgment to the Retirement Association. The court stated that although it agreed with the County that the decision relied on by the Retirement Association, *Aquilino, supra,* 60 Cal.App.4th 1509, was distinguishable and not controlling, it found the *Aquilino* court's focus on equitable considerations to be the correct approach in analyzing the issue. Specifically, the trial court stated that resolution No. 2-44 could not be upheld because it creates an "inequity" by providing only those persons employed on March 8, 2002, with retroactive Tier A benefits, and excludes returning employees from obtaining this benefit. The court thus entered judgment ordering the County to calculate the pension benefits for the two groups of returning employees at Tier A for their entire period of eligible service, both before and after March 8, 2002.[6]

## DISCUSSION

### I. *Review Standards*

The parties agree that, under resolution No. 2-44, only individuals who were employed by the County on March 8, 2002, are entitled to retroactive Tier A benefits for their past service credit. The parties further agree that this provision excludes Returning Deferreds and Redepositors from obtaining this

---

[6] Although the interveners did not bring a separate summary judgment motion and merely joined in the Retirement Association's motion, the County stipulated that the court's summary judgment extends to a favorable judgment on the interveners' complaint for purposes of facilitating an appeal. All further reference to the Retirement Association as the respondent in this action includes the interveners.

retroactive benefit. The parties disagree, however, as to whether the County had the authority to make this distinction under the applicable state law, CERL. Thus, the sole issue on appeal concerns one of statutory interpretation.

■ This analysis requires that we ascertain the intent of the Legislature in enacting the relevant CERL provisions. In so doing, " ' "[w]e first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." [Citation.] If the statutory language is unambiguous, "we presume the Legislature meant what it said, and the plain meaning of the statute governs." ' " (*Bonner v. County of San Diego* (2006) 139 Cal.App.4th 1336, 1344 [44 Cal.Rptr.3d 116].)

■ " ' "If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " [Citation.] "[T]he courts 'should construe every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' ". [Citations.] "Any ambiguity or uncertainty in the meaning of pension legislation must be resolved in favor of the pensioner, but such construction must be consistent with the clear language and purpose of the statute." ' " (*Lear v. Board of Retirement, supra*, 79 Cal.App.4th at p. 434.)

The proper interpretation of the CERL is a question of law subject to independent review on appeal. (*Bonner v. County of San Diego, supra*, 139 Cal.App.4th at p. 1344.)

## II. *Summary of Analysis and Conclusions*

We begin our statutory analysis with the undisputed principle that in 2002, a county could select different retirement benefit levels for members of its retirement system to achieve its desired financial and employment objectives, *unless the distinction was otherwise specifically prohibited.* (See § 31485.9.) In this case, the County elected to provide a retroactive benefit only to members who were employed on a particular date. The Retirement Association argues that this distinction was prohibited. Because the Retirement Association

is seeking to invoke an exception to the general rule, it is the Retirement Association's burden to show the County's action was improper under a relevant statute.

In determining whether this burden was satisfied, we examine each of the statutes relied upon by the Retirement Association: (1) the statute authorizing the County to make pension increases retroactive, section 31678.2; (2) the statute authorizing the Tier A level benefits, section 31676.17; and (3) the statutes primarily relied upon by the Retirement Association that concern the rights of Returning Deferreds and Redepositors, sections 31642 and 31652. We conclude that none of these statutes prohibited the County from providing a retroactive pension benefit increase only to those employees employed on the effective date of the resolution. We further conclude that the decision relied on by the Retirement Association, *Aquilino*, *supra*, 60 Cal.App.4th 1509, while superficially similar, is factually and legally distinguishable, and its reasoning is not applicable to the matter before us.

### III.  *Section 31678.2: Statute Authorizing Retroactive Pension Benefit Increases*

█ Before 2000, the Legislature expressly prohibited a county from providing increased pension benefits on a retroactive basis. (§ 31678.) However, in 2000, the Legislature enacted a broad exception to this rule, specifically providing counties with the option of applying an improved benefit formula in a retroactive manner. (§ 31678.2.)[7] Under section 31678.2, counties may require members to pay for the increased retroactive benefits "if approved in a memorandum of understanding executed by the board of supervisors and the employee representatives." (§ 31678.2, subd. (b).)

█ On our review of section 31678.2, we find no express language or implied terms reflecting that the Legislature intended to require a county

---

[7] Section 31678.2 states: "(a) Notwithstanding Section 31678 or any other provision of this chapter, a board of supervisors or a governing body of a district may, by resolution adopted by majority vote, make any section of this chapter prescribing a formula for calculation of retirement benefits applicable to service credit earned on and after the date specified in the resolution, which date may be earlier than the date the resolution is adopted. [¶] (b) A resolution adopted pursuant to this section may, if approved in a memorandum of understanding executed by the board of supervisors and the employee representatives, require members to pay all or part of the contributions by a member or employer, or both, that would have been required if the section or sections specified in subdivision (a), as adopted by the board or governing body, had been in effect during the period of time designated in the resolution. The payment by a member shall become part of the accumulated contributions of the member. [¶] (c) This section shall only be applicable to members who retire on or after the effective date of the resolution described in subdivision (a)."

providing this elective retroactive pension benefit to extend the benefit to those who later return to employment. The statute does, however, contain an express limitation that counties may not offer the retroactive benefit to employees who retired before the effective date of the resolution. (§ 31678.2, subd. (c).) This subdivision reflects that the Legislature knew how to impose restrictions on a county's use of the retroactive benefit, and by not including a rule that the retroactive benefit must be shared by existing and returning employees, we infer this requirement was not intended.[8]

The legislative history underlying section 31678.2 supports our conclusion. The legislative history materials submitted by the parties show that the supporters of this legislation were seeking to provide counties with " 'maximum local control' " in determining the appropriate retirement formula and to require the counties to engage in collective bargaining on the retroactive benefit issue. (See Assem. Com. on Public Employees, Retirement and Social Security, Analysis of Sen. Bill No. 1696 (1999–2000 Reg. Sess.) as amended May 18, 2000, pp. 1–2; Sen. 3d reading analysis of Sen. Bill No. 1696 (1999–2000 Reg. Sess.) as amended May 18, 2000, pp. 1–2.) These objectives are consistent with a conclusion that the Legislature intended to provide the counties with broad discretion in deciding the manner in which to apply this optional retroactive benefit. In asserting a contrary view, the Retirement Association quotes from various committee analyses and other memoranda in an attempt to show the Legislature intended to restrict this authority by requiring that the retroactive benefit be offered to "all members." However, when viewed in context, the quoted statements do not support the Retirement Association's position.

## IV. *Section 31676.17: Statute Authorizing Tier A Benefit Level*

We also reject the Retirement Association's reliance on the statute authorizing the Tier A benefit level, section 31676.17.[9] This code section

---

[8] To the extent the Retirement Association argues that the Legislature did not express this restriction because it is presumed to have been aware of the *Aquilino* decision, we find this argument to be unconvincing. (*Aquilino, supra,* 60 Cal.App.4th 1509.) As explained below, *Aquilino* held only that returning employees cannot be placed in a less favorable benefit tier after their return, and does not stand for the broader proposition that returning employees must be provided the same increased level of pension benefits as if they remained employed for the entire period.

[9] Section 31676.17 provides: "This section may be made applicable in any county on the first day of the month after the board of supervisors of the county adopts, by majority vote, a resolution providing that this section shall become applicable in the county. Notwithstanding any other provisions of this chapter, the current service pension or the current service pension combined with the prior service pension is an additional pension for members purchased by the contributions of the county or district sufficient, when added to the service retirement annuity,

provides a table and formula reflecting this benefit level and states that this higher (Tier A) benefit level "may be made applicable in any county." (§ 31676.17.) The statute further provides that its provisions "shall apply to members employed by the county on or after the date this section becomes operative in the county." (§ 31676.17.)

■ Section 31676.17's terms do not support the conclusion that the Legislature intended to require that counties electing to offer this higher pension allowance in a retroactive manner must provide this increased benefit equally to existing and returning employees. To the contrary, as recognized by the trial court, the use of the word "may" in the statute suggests a legislative objective of providing counties broad discretion to determine whether this benefit level is appropriate and not to restrict the county's decisionmaking in this regard. (§ 31676.17.)

■ Retirement Association argues that although the Legislature made section 31676.17 elective, it did not provide a county with the authority to make the higher benefit level retroactive only for those employed on a particular date. Retirement Association relies on the statutory language that upon adoption by a county, the benefits "shall apply to *members* employed by the county on or after the date this section becomes operative in the county." (§ 31676.17, italics added.) This sentence does not reasonably suggest that the Legislature was intending to address the rights of returning employees. Instead, a more realistic interpretation is that the Legislature intended the reference to "members" to broadly identify those who may be affected by the adoption of the higher benefit level, and not to specify which members must be entitled to a retroactive benefit increase.

---

to equal the fraction of one-fiftieth of the member's final compensation set forth opposite the member's age at retirement, taken to the preceding completed quarter year, in the following table multiplied by the number of years of current service or years of current and prior service with which the member is entitled to be credited at retirement, but in no event shall the total retirement allowance exceed the member's final compensation: [¶] [Table omitted.] [¶] In any county operating under this section, any limitations in any provisions of this chapter upon the amount of compensation used for computing rates of contributions shall be disregarded. [¶] . . . [¶] This section shall apply to members employed by the county on or after the date this section becomes operative in the county."

## V. *Sections 31642 and 31652: Statutes Governing Returning Deferreds and Redepositors*

We now turn to the two code sections upon which the Retirement Association primarily relies: section 31642[10] and section 31652.[11] Before examining these specific statutes, it is helpful to place these statutes in the context of the larger statutory scheme.

### A. *Statutory Framework*

█    Both statutes are contained in the "Service" article of the CERL. "Service" within the meaning of CERL refers to the amount of qualified time an employee has worked for the county, i.e., the amount of employment time that an employee is entitled to be credited at retirement. (See § 31641.) The calculation of the retirement allowance is generally determined by taking the employee's retirement age multiplied by a statutory fraction of the employee's final compensation, which is then multiplied by the number of "service" years for which the employee has received credit. (See, e.g., § 31676.17.) Thus, the higher the service credit, the higher the retirement benefit.

---

[10] Section 31642 states: "The following shall not be considered as breaking the continuity of service: [¶] (a) A temporary layoff because of illness or for purposes of economy, suspension, or dismissal, followed by reinstatement or re-employment within one year. [¶] (b) A leave of absence followed by reinstatement or re-employment within one year after the termination of the leave of absence. [¶] (c) A resignation to enter, followed by entrance into, the armed forces of the United States, followed by re-employment by the county or district within six months after the termination of such service. [¶] (d) Resignation of a member who has elected in writing to come within the provisions of Article 9 followed by re-employment before withdrawal of any accumulated contributions. [¶] The withdrawal of accumulated contributions followed by the redeposit of the contributions upon re-entrance into service does not constitute a break in the continuity of service."

[11] Section 31652, subdivision (a), states: "(a) Any member may redeposit in the retirement fund, prior to filing an application for retirement, by lump sum payment or by installment payments over a period of one year or for a longer time upon approval of the board, an amount equal to all of the accumulated normal contributions which he has withdrawn, plus regular interest thereon from the date of separation from the retirement system, and his membership is the same as if unbroken by such termination. Except as provided in this section his rate of contribution shall be based on age at the nearest birthday at time of reentrance into the system. If he does not redeposit all of the accumulated normal contributions previously withdrawn he shall be considered as a new member without credit for any previous service. [¶] 'Regular interest' as used in this section shall mean that amount of interest which would have been credited to the account of the member on the amount to be deposited at the interest rates established for the system if the contributions required by this section had been on deposit from the date of separation from the retirement system until the amount required to be deposited has been paid."

Under CERL, an employee earns service credit through "uninterrupted employment," which is specifically defined in section 31641.[12] Under this code section, an employee who leaves county employment, and then returns, will be credited only with the latter period of time for purposes of determining the amount of current "service" years when calculating the employee's retirement allowance at retirement. However, there are broad exceptions to this rule.

■ Of particular relevance here, one of the code sections relied upon by the Retirement Association, section 31642 (see fn. 10, *ante*), identifies five situations that "shall not be considered as breaking the continuity of service." Two of those situations involve Returning Deferreds and Redepositors: (1) "Resignation of a member who has elected in writing to come within the provisions of Article 9[13] followed by re-employment before withdrawal of any accumulated contributions"; and (2) "The withdrawal of accumulated contributions followed by the redeposit of the contributions upon re-entrance into service does not constitute a break in the continuity of service." (§ 31642, subd. (d).) The first situation above refers to Returning Deferreds, i.e., those who elected to leave their retirement contributions in the county retirement system when they terminated their county employment, and then were subsequently reemployed. The second situation concerns Redepositors, i.e., those individuals who removed their retirement contributions upon leaving County employment, and then redeposited the contributions upon their reemployment with the County. With respect to these Redepositors, the other code section relied upon by Retirement Association (§ 31652, subd. (a); see fn. 11, *ante*), sets forth the manner in which the employee may redeposit the withdrawn funds to obtain the credit for the employee's prior service referred to in the second paragraph of section 31642, subdivision (d).

### B. *Retirement Association's Contentions*

■ The Retirement Association contends that a returning employee's statutory right to "continuity of service" in section 31642 and to "unbroken" membership in section 31652, subdivision (a), means that the County is

---

[12] Section 31641 provides that: " 'Service' means uninterrupted employment of any person appointed or elected for that period of time: [¶] (a) For which deductions are made from his earnable compensation from the county or district for such service while he is a member of the retirement association. [¶] (b) In military service for which the county or district or member is authorized by other provisions of this chapter to make, and does make, contributions. [¶] (c) For which he receives credit for county service or for public service or for both pursuant to the provisions of this article. [¶] (d) Allowed for prior service." "Prior service" means "service prior to the date of entry of a member into the retirement system." (§ 31643.)

[13] Article 9 of CERL sets forth the rights of Returning Deferreds and all those who elect to leave their retirement contributions in the county retirement system when they leave county employment. (§§ 31700–31706.)

prohibited from conditioning an increased pension benefit on employment on a particular date and using this condition to deny the increased benefit to the returning employee. On our review of the statutory language and each statute's function and purpose in the overall statutory scheme, we find no reasonable basis for interpreting the statutes in this manner. Although we are required to interpret pension legislation favoring employee rights, we cannot adopt a meaning that is not grounded in the statutory language. (See *Lear v. Board of Retirement, supra*, 79 Cal.App.4th at p. 434.)

As described above, section 31642's "continuity of service" language is directly related to the statutory requirement that, to count as "service," the employment must have been "uninterrupted." By including the code section in the "Service" article and stating that the listed circumstances do not break the "continuity of service," the Legislature created an exception to the general rule and allowed the earlier service to be counted for purposes of determining years of service at retirement. Beyond this specific language relating to the interrupted service concept, there is nothing in this code section suggesting the Legislature was intending to provide affirmative rights to Redepositors or Returning Deferreds to be treated as if the individual was always "employed" by the county, and thus to preclude a county from conditioning certain increased benefits on employment status on a particular date.

The Retirement Association argues that because "service," as defined in section 31641 (see fn. 12, *ante*), means "uninterrupted employment," section 31642, subdivision (d) "can only properly be interpreted to provide that Returning Deferreds must be treated as having continuous, unbroken, and uninterrupted '*employment*.' " (Italics added.) However, service is defined as "uninterrupted employment" during only those periods when the member or the employer is making retirement contributions that entitle the member to service credit. (§ 31641.) Under this definition, "service" and "employment" are related, but are not necessarily the same. If the Legislature had intended to provide in section 31642 that a returning employee who comes within one of the statutory categories should be considered as having continuous' employment, the Legislature could have stated this in express terms. Read in a reasonable manner, the statute cannot be interpreted as reflecting an intent to restrict a county's discretion to decide that a particular pension benefit should be provided only to those who were actually employed on a particular date.

Although the statutory scheme prohibits the County from taking an action that would dilute, ignore or decrease the pension benefits previously held (or deferred) by a returning employee (see *Aquilino, supra*, 60 Cal.App.4th 1509), the County is not statutorily required to retroactively increase those prior benefits to the same level given to employees actually working for the County on a given date.

The other section relied upon by the Retirement Association, section 31652, subdivision (a), describes the procedure for a Redepositor to reinstate his or her prior membership in the association and trigger the "continuity of service" exception in section 31642, subdivision (d). (See fns. 10 & 11, *ante.*) Under section 31652, subdivision (a), if an employee who left county employment and withdrew his or her accumulated contributions, returns to employment and redeposits the same amount of contributions with interest, "his membership is the same as if unbroken by such termination." In other words, he is the same as a Returning Deferred, who always remained a member of the county retirement association. (§ 31470.)

The Retirement Association argues that this right to "unbroken" *membership* equates with the right to claim all benefits as if he or she remained employed. However, there is no statutory support for this argument. The CERL statutes do not state that membership in the county retirement system is the same as employment. To the contrary, the statutes expressly provide that an individual may be a member of the retirement association even if the individual is not a current employee. For example, an employee who leaves county employment but leaves his retirement contributions in the retirement system, continues to be a member but is clearly not viewed as an employee.

*Aquilino, supra,* 60 Cal.App.4th 1509, relied upon by the Retirement Association, does not support a contrary conclusion. The *Aquilino* court addressed the rights of Redepositors after a county changed from a single formula (tier) system to a multiple tier system. (*Id.* at pp. 1512–1515.) In that case, the plaintiffs were employees who had been employed before the establishment of tiers in Marin County. (*Id.* at p. 1513.) During their absence, the county created Tier I and Tier II. Persons employed before July 1980 were permitted to continue in the original plan (Tier I), and persons employed after July 1980 were placed in the new Tier II plan which provided lower benefits and thereby required lower employee contributions. (*Id.* at pp. 1512–1513.)

When the *Aquilino* plaintiffs returned to Marin County employment after July 1980, they repaid their withdrawn contributions at the higher Tier I level, but then were placed in the Tier II level, and were told they would receive only Tier II benefits for their past and future service upon their retirement. (*Aquilino, supra,* 60 Cal.App.4th at pp. 1513–1515.) Thus, these employees would not receive the full benefit of the contributions that they were required to return to the system to reactivate their prior membership status. Not surprisingly these employees petitioned for a writ of mandate seeking to compel the county to place them in Tier I.

Reversing the trial court's judgment dismissing the action, the *Aquilino* court initially observed that the statute authorizing different benefit levels for new employees (§ 31483) did not address the issue whether returning redepositing employees may be characterized as "newly hired" employees for purposes of the tiered benefit levels. (*Aquilino, supra,* 60 Cal.App.4th at pp. 1516–1517.) However, the *Aquilino* court found the Legislature manifested its intent on this issue in section 31652, subdivision (a), the code section that sets forth the procedures for a redepositing employee to repay withdrawn contributions. (*Aquilino, supra,* 60 Cal.App.4th at pp. 1518–1522.) Focusing on the statutory language that once a redeposit is completed, the employee's " 'membership is the same as if unbroken by such termination,' " the *Aquilino* court stated it agreed with the returning employees' argument that "once a returning employee completes the redeposit of withdrawn retirement contributions, the employee resumes the *same membership status* as if the employee had never left county employment." (*Id.* at p. 1518, italics added.) Based on this conclusion, the *Aquilino* court held that a returning employee is entitled to return to the *same membership tier* as when the employee left county employment, and rejected Marin County's argument that section *31652, subdivision (a)* is "limited to calculation of a redepositing employee's credit for time of service." (*Aquilino, supra,* at p. 1518.)

The *Aquilino* court also based its statutory interpretation on its view that Marin County's treatment of the Returning Deferreds was "inequitable" because CERL requires the employee to repay the contributions *at his or her prior benefit level,* and that the Legislature would not have intended to require county employees to pay for more benefits than they would receive. (*Aquilino, supra,* 60 Cal.App.4th at p. 1519.) The *Aquilino* court stated, "we see no reason to presume that the Legislature intended the inequitable result of forcing a redepositing member to buy service credit at prices unrelated to the benefits to be received. [Citation.] While the Legislature [enacted the legislation permitting tiered benefit levels] clearly intend[ing] to assist counties in controlling future pension costs in order to avert pending fiscal crises, there is nothing in the legislative history that indicates an intent to permit counties to 'have their cake and eat it too' in this fashion." (*Ibid.*) The court thus concluded that a requirement that a redepositing member repay all of his prior withdrawn amount plus interest, "is only consistent with an interpretation of the statute that permits a redepositing member to receive benefits commensurate with his or her contributions" and thus "evidences an intent that a redepositing employee be placed back into his or her former retirement tier." (*Id.* at pp. 1521, 1520.)

We agree with the conclusions reached in *Aquilino.* By stating that a rehired employee who repays his or her contributions with interest at his or her former benefit tier level resumes "unbroken" membership in the retirement association, the Legislature clearly intended that a Redepositor would

be placed in a tier no less than the benefit level associated with the repaid retirement contributions. Based on the language of section 31652, subdivision (a), the Legislature could not have reasonably intended to permit a county to penalize a returning employee by requiring the employee to repay contributions at a particular level with interest and then awarding benefits at a level that is lower than these contributions.

But neither *Aquilino*'s holding, nor its underlying reasoning, logically extends to support the Retirement Association's position in this case. Unlike Marin County's practice in *Aquilino*, resolution No. 2-44 allows the returning employee to obtain the benefits of his or her prior tier: (1) a returning Tier II member is entitled to a retroactive increase to Tier I level for all prior benefits; and (2) returning Tier I and II members are entitled to a prospective increase to Tier A. Thus, unlike *Aquilino*, the Returning Deferreds receive the full advantage of their returned contributions (with additional benefits at no cost to them). Additionally, unlike *Aquilino*, the benefits that the rehired employee is seeking—the retroactive increase to Tier A—were not based on membership or tier status. Instead, an employee's entitlement to the benefits was based on the fact of employment on a particular date. As noted previously, employment and membership in a county retirement association are not synonymous.

In finding *Aquilino* distinguishable, we recognize that the *Aquilino* decision contains some broad language that appears to suggest that a redepositing returning county employee must be treated as if he or she never left the county *employment.* (*Aquilino, supra,* 60 Cal.App.4th at p. 1518.) However, it is well settled that " 'the language of an opinion must be construed in light of the facts of the particular case . . . .' " (*Finegan v. County of Los Angeles* (2001) 91 Cal.App.4th 1, 9 [109 Cal.Rptr.2d 762].) " '[A]n opinion's authority is no broader than its factual setting and the parties cannot rely on a rule announced in a factually dissimilar case.' " (*Ibid.*; see *In re Alexis M.* (1997) 54 Cal.App.4th 848, 852 [63 Cal.Rptr.2d 356] [decision must be viewed in context of specific facts of case].) Because the *Aquilino* court was not required to, and did not, reach the issue as to whether a county may condition an increased pension benefit on employment on a particular date, the court's broad statements equating membership with continued employment do not control here.

Moreover, the *Aquilino* court made the statements that Redepositors must be treated as if they never left employment in the portion of the decision discussing a Redepositor's right to reclaim the same "membership status" as before the employee left the county. (*Aquilino, supra,* 60 Cal.App.4th at pp. 1518–1520.) The *Aquilino* court stated that it agreed with the plaintiffs' argument that under section 31652, subdivision (a), "once a returning employee completes the redeposit of withdrawn retirement contributions, the

employee resumes the *same membership status* as if the employee had never left county employment." (*Aquilino, supra*, at p. 1518, italics added.) Viewed in context, the court was equating membership status with a particular tier benefit level, such that an employee was entitled to remain at that level when he or she returned to county employment. The matter of remaining at the same tier level is not at issue in this case.

Additionally, *Aquilino* did not address the rights of Returning Deferreds, and instead considered the rights only of Redepositors. We have reviewed section 31642 (the "continuity of service" statute) and each of the provisions contained within CERL's article 9 pertaining to "deferred retirement," and have found no indication that the Legislature intended to require a county to extend all new *increased* benefits to a Returning Deferred.

█ Retirement Association's reliance on a 1998 superior court judgment is unhelpful. (*Lear v. Board of Retirement* (Super. Ct. San Diego County, 1998, No. 706279).)[14] A trial court judgment cannot properly be cited in support of a legal argument, absent exceptions not applicable here. (See *Santa Ana Hospital Medical Center v. Belshé* (1997) 56 Cal.App.4th 819, 831 [65 Cal.Rptr.2d 754].) Moreover, in the superior court judgment relied on by Retirement Association, the factual circumstances were the same as *Aquilino*—whether the county could place Returning Deferreds into a lower tier than when they left county employment. As we have explained, the factual and legal issues in this case are distinguishable.

█ Retirement Association additionally argues that we should infer from the Legislature's failure to amend sections 31642, subdivision (d) and 31652 as implicit approval of *Aquilino*'s holding that a county may not discriminate against Returning Deferreds and Redepositors. This argument is unpersuasive. First, as discussed, *Aquilino* did not make this broad holding, and thus the failure to amend the statutes does not show an implicit approval of this principle. Additionally, it is well established that legislative inaction alone does not necessarily imply legislative approval, and at most provides only a "weak inference of acquiescence." (*Gunther v. Lin* (2006) 144 Cal.App.4th 223, 237 [50 Cal.Rptr.3d 317]; see *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1156 [278 Cal.Rptr. 614, 805 P.2d 873]; *Tomlinson v. Qualcomm, Inc.* (2002) 97 Cal.App.4th 934, 942 [118 Cal.Rptr.2d 822].)

---

[14] In referring to the "*Lear* decision" to support its arguments throughout its respondent's brief, Retirement Association cites to the superior court judgment, and not to our appellate decision on a different aspect of the same case. (See *Lear v. Board of Retirement, supra,* 79 Cal.App.4th 427.) In *Lear,* the appellants appealed only from that portion of the judgment pertaining to the scope of reciprocal retirement benefits (§ 31830 et seq.), a matter not at issue here.

The *Aquilino* court reached the correct decision based on the obvious inequity that returning employees (who were entitled to "unbroken" membership in the retirement system), were compelled to accept lesser pension benefits than the contribution amount they had repaid into the system. The fact that the Legislature took no action to amend the statutes in light of this holding does not support an inference that the Legislature intended to restrict a county's discretion to impose limits on the elective retroactive benefit.

## DISPOSITION

Judgment reversed. The superior court is ordered to vacate the summary judgment granted to Retirement Association and interveners Robert Hickey and Glenn Still, and directed to enter summary judgment in favor of County. County to recover costs on appeal.

McDonald, J., and McIntyre, J., concurred.

A petition for a rehearing was denied July 3, 2007, and the petition of all respondents for review by the Supreme Court was denied August 29, 2007, S154526.