[L. A. No. 28185. In Bank. Jan. 22, 1965.]

CREST CATERING COMPANY, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; CARL KIRSTEN, Real Party in Interest.

Epport & Delevie and Victor M. Epport for Petitioner.

Thomas C. Lynch, Attorney General, Edward M. Belasco and Herschel T. Elkins, Deputy Attorneys General, Mitchell, Silberberg & Knupp and Howard S. Smith as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

James H. Denison and Edward S. Stutman for Real Party in Interest.

Harry Graham Balter, Bledsoe, Smith, Cathcart, Johnson & Rogers and Robert A. Seligson as Amici Curiae on behalf of Real Party in Interest.

TRAYNOR, C. J.—Carl Kirsten, as administrator of an Employee Welfare and Retirement Fund and as assignee of the trustees of the fund, brought an action against Crest Catering Company to compel payment of contributions allegedly owed to the fund under the terms of a contract with a labor union. He alleged that in June 1957 Crest orally agreed with the union to make contributions to the fund at specified hourly rates for each hour worked by each of its employees and to be bound by the terms of certain trust instruments establishing the fund. He also alleged that Crest failed to make a full and complete accounting of its indebtedness under the contract.

During discovery proceedings, Kirsten directed interrogatories to Crest as to the number of employees and the hours worked by each during the period in issue in order to ascertain the correct amount due under the alleged contract. When Crest responded that all its books and records had been destroyed by fire, Kirsten suggested that Crest obtain the requested information from copies of its employment tax returns. The completeness and accuracy of Crest's answers to several sets of interrogatories became the subject of a sharp and acrimonious dispute. On Kirsten's motion the court ordered Crest to produce for inspection copies of its quarterly returns submitted to the California State Department of Employment and to the federal agencies. Crest then filed this petition for a writ to prohibit enforcement of the order on the ground that copies of its employment tax returns filed with the Department of Employment are privileged under sections 1094 and 2111 of the Unemployment Insurance Code.[1]

Section 2031 of the Code of Civil Procedure provides that a party may be ordered to produce for inspection "any designated documents, papers, books, accounts, letters, photographs, objects or tangible things, *not privileged* . . ." which relate to pending litigation. (Italics added.)

With exceptions not here relevant, section 1094 of the Unemployment Insurance Code provides that the information delivered to the Department of Employment by an employing unit "shall be for the exclusive use and information of the

---

[1] It is not contended that the information submitted to the federal agencies would be privileged under federal law. (See cases cited in 70 A.L.R.2d 237 at pp. 244 and 246.) In *Webb* v. *Standard Oil Co.* (1957) 49 Cal.2d 509, 513-514 [319 P.2d 621], however, we refused to permit inspection of federal tax returns if the information contained therein would be deemed privileged under state law. Accordingly, the propriety of the discovery order as it relates to the federal returns depends upon whether it would impinge on the privilege with respect to state returns.

director . . . and shall not be open to the public, nor admissible in evidence in any action or special proceeding. . . ." Section 2111 provides that the information "is confidential and shall not be published or open to public inspection in any manner . . ." and declares that any employee of the department who violates this section is guilty of a misdemeanor.

These provisions manifest a clear legislative purpose to preserve the confidentiality of information submitted to the Department of Employment. (See *Webb* v. *Standard Oil Co.* (1957) 49 Cal.2d 509, 513 [319 P.2d 621].)

Amici curiae contend that we should re-examine the holding in the *Webb* case in the light of *St. Regis Paper Co.* v. *United States* (1961) 368 U.S. 208, 218 [82 S.Ct. 289, 7 L.Ed.2d 240], which held that statutes substantially the same as those considered in the *Webb* case did not create a privilege. Following the *St. Regis* case, however, Congress amended the relevant statutes to abrogate the rule of that case. Moreover, unlike the statutes considered in the *Webb* case,[2] sections 1094 and 2111 leave no room for doubt that they create a privilege. Indeed, in the *St. Regis* opinion itself, the United States Supreme Court recognized that statutes similar to sections 1094 and 2111 created a privilege. (368 U.S. at p. 218.) We are therefore not persuaded that we should re-examine the holding in the *Webb* case.

There is also no merit in Kirsten's contention that these sections do not make the information immune from discovery but merely make it privileged at the trial. Section 2016, subdivision (b) of the Code of Civil Procedure expressly provides that "All matters which are privileged against disclosure upon the trial under the law of this State are privileged against disclosure through any discovery procedure. . . ."

We agree, however, with Kirsten's contention that Crest waived its right to assert the privilege.

In its contract with the union, Crest agreed to be bound

---

[2]In *Webb* v. *Standard Oil Co.* (1957) 49 Cal.2d 509 [319 P.2d 621], we were called upon to interpret sections 19282 and 19283 of the Revenue and Taxation Code. Section 19282 provides: "Except as otherwise provided . . . it is a misdemeanor for the Franchise Tax Board, any deputy, agent, clerk, or other officer or employee, to disclose in any manner information as to the amount of income or any particulars set forth or disclosed in any report or return required under this part." Section 19283 provides: "Such information may be disclosed in accordance with proper judicial order in cases or actions instituted for the enforcement of this part or for the prosecution of violations of this part."

by the trust agreement that governs the Welfare and Retirement Fund. Section 4.07 of that agreement provides: "Each employer covered hereby shall assist in the preparation and cooperate in the execution of any and all forms, applications or other data necessary in the establishment and operation of the Plan and Fund, and in this connection *shall promptly furnish all necessary information upon demand* to the Trustees or the Administrator entrusted with the operation and administration of the Plan and Fund." (Italics added.) Section 4.08 provides: "To facilitate the Trustees' determination of full and complete reporting, the Trustees may, within their discretion, assign an auditor at the expense of the Fund (and not at the expense of either the Employers' Council or the Union) to audit the payrolls for the sole purpose of determining the correct amount of contributions owed the Funds. . . ."

Crest contends that the foregoing provisions do not waive the privilege because there is no specific reference either to the code provisions creating the privilege or to the tax returns. A waiver does not depend upon meeting such a brittle requirement. In *Torbensen* v. *Family Life Insurance Co.* (1958) 163 Cal.App.2d 401, 404 [329 P.2d 596], the court was called upon to determine whether a clause in an application for a life insurance policy operated to waive the doctor-patient privilege. The clause in question stated: "To whom it may concern: I hereby authorize and request you to disclose any and all information and records concerning my condition when under observation by you, if requested to do so" by the life insurance company. Even though no reference was made either to the particular code provision involved or to the particular privilege involved, the court found that the applicant waived the privilege.

A waiver may occur (1) by an intentional relinquishment or (2) as "the result of an act which, according to its natural import, is so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." (*Rheem Mfg. Co.* v. *United States* (1962) 57 Cal.2d 621, 626 [21 Cal.Rptr. 802, 371 P.2d 578].)

Crest's promise to "furnish all necessary information upon demand" meets the first test enunciated in the *Rheem* case. Although the employment tax returns might not be classified as "necessary information" were the payrolls available, the destruction of the payrolls left the tax returns as the only source of the information required to be furnished by the trust agreement. Inspection of copies of the tax returns is

clearly ''necessary'' under these circumstances. Crest proposes that we interpret section 4.07 of the trust agreement as requiring it to furnish all necessary information *unless the same be privileged*. The language of section 4.07, however, is clear and explicit and does not limit Crest's obligation.

Furthermore, Crest's actions during two prior audits for other years not only illustrate its awareness of the broad scope of section 4.07, but meet the second test enunciated in the *Rheem* case. On those occasions Crest opened its books and records, including in one instance copies of its employment tax returns, for audit and inspection by Kirsten and made substantial payments found to be owing as a result of those audits.

The conclusion that Crest waived the privilege is buttressed by the fact that the payrolls and the tax returns contain basically the same information. Had Crest's payrolls not been destroyed by fire, no claim of privilege could have been raised to prevent Kirsten from invoking his rights under section 4.08 to obtain access to those records. The same information does not become less obtainable merely because it is written on a governmental form. (*Tollefsen* v. *Phillips* (D.C. Mass. 1954) 16 F.R.D. 348, 349. See also *Connecticut Importing Co.* v. *Continental Distilling Corp.* (D.C. Conn. 1940) 1 F.R.D. 190, 192; *Paramount Film Distributing Corp.* v. *Ram,* (D.C. E.D. S.C. 1950) 91 F.Supp. 778, 781; and *Reeves* v. *Pennsylvania R. Co.* (D.C. Del. 1948) 80 F.Supp. 107, 108-109; *Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355, 397 [15 Cal.Rptr. 90, 364 P.2d 266].)

The alternative writ is discharged, and the peremptory writ is denied.

Peters, J., Tobriner, J., Peek, J., Mosk, J. and Burke, J., concurred.

McCOMB, J.—I dissent. I would grant the writ of prohibition for the reasons expressed by Mr. Justice Herndon in the opinion prepared by him for the District Court of Appeal (*Crest Catering Co.* v. *Superior Court* (Cal.App.) 40 Cal. Rptr. 533).