**Spero SARIDAKIS, Plaintiff—
Appellant,**

v.

**UNITED AIRLINES, Defendant—
Appellee.**

No. 00–16141.
D.C. No. CV–97–00628–WHO.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 16, 2001.

Decided Dec. 20, 2001.

Before GOODWIN, HUG, and THOMAS, Circuit Judges.

## MEMORANDUM *

Saridakis appeals the District Court's grant of summary judgment with respect to his claim that United retaliated against him in violation of state and federal statutes prohibiting discrimination based on disability as well as his state law claim that United wrongfully terminated him. We have jurisdiction pursuant to 28 U.S.C. § 1331 and do affirm. Because the parties are familiar with the factual and procedural history of the case, we do not recount it here except as necessary to explain our decision.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

## 1. Retaliatory Termination

■ Viewing the evidence in the light most favorable to Saridakis, there exists no genuine issue of material fact that United terminated him in retaliation for exercising his rights under the Americans with Disabilities Act (ADA) and the Fair Employment and Housing Act (FEHA).

Courts analyze a retaliation claim brought pursuant to the FEHA under the same "burden shifting structure" applied in cases arising under Title VII. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir.2000). Likewise, the Ninth Circuit has adopted this same Title VII analysis for analyzing claims of retaliation brought under the ADA. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1121 (9th Cir.2000). Therefore, in order to make out a prima facie case of retaliation, Saridakis must show:

(1) that he was engaged in or was engaging in activity protected by the ADA or FEHA;

(2) United subjected him to an adverse employment decision; and

(3) that there was a causal link between the protected activity and the employer's action.

*Id.; McAlindin v. County of San Diego*, 192 F.3d 1226, 1238 (9th Cir.1999).

There is no support for Saridakis' argument that taking Marinol by prescription is a protected activity. Indeed, the only case that Saridakis cites in support of this argument merely holds that an employer cannot require disclosure of prescription medication as part of a drug-testing program. *See Roe v. Cheyenne Mountain Conference Resort*, 920 F.Supp. 1153, 1154–155 (D.Colo.1996), *rev'd on other grounds*, 124 F.3d 1221 (10th Cir.1997). United did not require Saridakis to disclose all prescription medication that he was taking. Rather, United gave Saridakis a drug test and, when the test came back positive, United merely provided Sar-idakis with an opportunity to explain the positive result.

■ In this case, then, the only protected activity that Saridakis engaged in was his March 1, 1996 filing of a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). Saridakis' suspension and termination are clearly adverse employment actions. However, the suspension occurred before Saridakis filed his complaint. Although United did terminate Saridakis after he filed the complaint, the termination was simply a follow-up action to the earlier suspension.

## 2. Legitimate, Non–Discriminatory Basis

■ As discussed above, Saridakis fails to make out a prima facie case of retaliation. However, even if he could, United would then have the opportunity to "provide a legitimate, non-discriminatory reason for its actions." *McAlindin*, 192 F.3d at 1238. United can easily do this. United terminated Saridakis because he tested positive for THC. Saridakis offers insufficient evidence to show that his termination was motivated by anything other than Sar-idakis' violation of the Last Chance Agreement, which he voluntarily entered into after testing positive for cocaine.

## 3. Public Policy

United contends that Saridakis failed to properly plead his claim for wrongful termination in violation of public policy. However, we need not decide this issue for, even if he did adequately plead the following claims, they would still fail.

### a. Right to Privacy

■ Saridakis contends that his discharge violated his right to privacy, via the doctor-patient privilege, in that he was "repeatedly hounded" to explain his

use of Marinol. However, as discussed above, Saridakis was merely offered an opportunity to explain himself after testing positive for THC. In addition, it is not sufficient that United's conduct merely implicated some public policy or fundamental right. Saridakis must also show that there was a "nexus" between what he claims constituted the violation of public policy and the termination of his employment. *Turner v. Anheuser–Busch, Inc.,* 7 Cal.4th 1238, 1258, 32 Cal.Rptr.2d 223, 876 P.2d 1022 (1994). Even if there was a violation of the doctor-patient relationship, which in turn violates the right to privacy, Saridakis offers no evidence of that violation being the basis of his termination. Indeed, Dr. Mikuriya confirmed to United that he had prescribed Marinol and that it was for symptoms of insomnia and pain.

### b. Waiver

Waiver of a right may occur in one of two ways: a party may 1) intentionally relinquish the right, or 2) engage in "conduct so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Harper v. Kaiser Cement Corp.,* 144 Cal.App.3d 616, 619, 192 Cal.Rptr. 720 (1983) (citing *Crest Catering Co. v. Superior Court,* 62 Cal.2d 274, 278, 42 Cal.Rptr. 110, 398 P.2d 150 (1965)).

Saridakis argues on appeal that when he returned to work in September 1995, United forever waived the right to terminate his employment for having unauthorized drugs in his system. Saridakis states that he informed medical review officer (MRO) Dr. Kottler upon his return to work that he was taking Marinol. However, it is undisputed that Saridakis' return to work drug test did not reveal the presence of THC or any other drug prohibited by the Last Chance Agreement or FAA regulation. FAA regulations prohibit employees in safety sensitive positions from having

greater than allowed amounts of THC in their system. As there was no documented evidence that Saridakis was in violation of the applicable regulations at that time, United was not empowered to take any action against him, and did not do so. The fact that United did not terminate Saridakis' employment following a negative drug test does not constitute "intentional relinquishment" of the right to terminate Saridakis' employment following a positive test.

Saridakis also alleges that by returning him to work, United took action "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Id.* United returned Saridakis to work based on the results of his drug test. The decision was made by United MRO Dr. Jensen, who determined that since Saridakis did not test positive for THC or any other drug prohibited under DOT regulations, he would take no action. Dr. Jensen's actions were entirely consistent with United's intention to act in accordance with federal regulations and the Last Chance Agreement.

The evidence does not support a conclusion that by returning Saridakis to work, United's conduct gave rise to a reasonable belief on Saridakis' part that he was entitled to work with THC in his system. It is undisputed that United informed Saridakis that he could not have THC in his system, and the Last Chance Agreement provided that a verified positive test for this substance would result in his immediate termination.

### c. Equitable Estoppel

As an alternative to his theory that United waived its right to terminate him, Saridakis alleges that as a result of allowing him to return to work in September 1995, United was thereafter equitably

estopped from terminating his employment. In order to make a prima facie case that United was estopped from terminating him, Saridakis must produce evidence of each of the following elements:

(1) the party to be estopped [United] must be apprised of the facts;

(2) [United] must intend [its] conduct shall be acted upon, or must so act that the party asserting the estoppel [Saridakis] had a right to believe it was so intended;

(3) . . . [Saridakis] must be ignorant of the true state of the facts; and

(4) . . . [Saridakis] must rely upon the conduct to his injury.

*Lear v. Bd. of Ret.*, 79 Cal.App.4th 427, 437, 94 Cal.Rptr.2d 89 (2000).

However, United was not "apprised of the fact" that Saridakis had unacceptable levels of THC in his system when he returned to work in September 1995. To the contrary, Saridakis' return to work drug test was negative. In addition, United continued to drug test Saridakis without objection and even informed him that he could not have THC in his system while working at United. These actions clearly indicate that United was not equitably estopped in its ability to terminate Saridakis for subsequent drug use.

In conclusion, there is no evidence that United's dismissal of Saridakis was motivated by anything other than his failing two drug tests in contravention of the Last Chance Agreement. For the foregoing reasons, the district court's grant of summary judgment is AFFIRMED.