Filed 8/8/25  Yarnell v. Michael Cadillac, Inc. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JORDAN YARNELL, | F085794 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 20CECG02289) |
| MICHAEL CADILLAC, INC., | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  D. Tyler Tharpe, Judge.

Fine, Boggs & Perkins, John P. Boggs, David J. Reese, Thomas H. Porter, and William D. Wheelock for Defendant and Appellant.

Domb & Rauchwerger, Zack I. Domb, Devin E. Rauchwerger, and Melissa N. Avila for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

This appeal concerns a dispute related to an arbitration agreement between appellant and defendant Michael Cadillac, Inc., and respondent and plaintiff Jordan Yarnell.  Respondent was previously employed by appellant and, following the end of his

employment, brought claims under the Labor Code against appellant both on his own behalf and on behalf of the state pursuant to the Private Attorneys General Act (PAGA). Following approximately two years of litigation, appellant moved to compel arbitration of respondent's individual PAGA claims following *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, and sought dismissal of respondent's representative PAGA claims.

The trial court concluded appellant had failed to demonstrate an arbitration agreement between the parties exists; the purported agreement was unconscionable; and appellant had waived its ability to seek arbitration due to unnecessary delay and prejudice to respondent. We conclude the trial court erred both by applying the wrong test to determine whether an arbitration agreement exists and in finding the agreement unconscionable. While the trial court also erred in its analysis of waiver, due to the recent issuance of certain opinions from our Supreme Court, upon reviewing the question de novo, we agree with the trial court that waiver is established under the facts of this case. Accordingly, we affirm the order denying the petition to compel arbitration.

## **BACKGROUND**

Respondent filed suit against appellant in August 2020, alleging claims under the Labor Code, both individually and on a representative basis as authorized by PAGA. Appellant answered the suit in September 2020, and filed an amended answer in November 2020. Among the affirmative defenses invoked in both of these answers was the existence of an arbitration agreement. Respondent sought to have the case designated as complex in September 2021, which, being unopposed, was granted by order in April 2022.

On June 15, 2022, the Supreme Court issued its opinion in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*), overruling *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, which had prevented courts from separating individual PAGA claims from representative PAGA claims. Approximately eight months later, on January 12, 2023, appellant filed a petition to

2.

compel arbitration, asserting *Viking River* required respondent's individual claims be sent to arbitration and his representative claims be dismissed. Respondent opposed this motion, arguing that appellant had not made a showing that an agreement to arbitrate exists, the agreement that was asserted to exist was unconscionable, and appellant had waived the ability to arbitrate.

The trial court found in favor of respondent on each of his arguments, concluding first that appellant had failed to demonstrate the existence of an agreement to arbitrate, because the purported arbitration agreement was not appropriately authenticated. This conclusion is wrong, based on the opinion we issued just last year in *Ramirez v. Golden Queen Mining Co., LLC* (2024) 102 Cal.App.5th 821 (*Ramirez*), which the trial court unfortunately did not have the benefit of when issuing its decision in the current case. However, the court also found both unconscionability and waiver, either of which is sufficient to defeat the enforcement of an arbitration agreement. While we do not agree with the trial court's unconscionability analysis, we do agree that in the circumstances of this case, appellant has waived its ability to compel arbitration of respondent's individual claims.

## ANALYSIS/DISCUSSION

### I.    *Standard of Review*

On appeal, we generally review questions of law de novo, and questions of fact for substantial evidence. (*McGhan Medical Corp. v. Superior Court* (1992) 11 Cal.App.4th 804, 809.) The question of whether the trial court followed the established test for determining the existence of an agreement to arbitrate is a question of law subject to de novo review. (*Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 560; *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1378.)

The standard of review applied in relation to enforceability of a contract depends on the nature of the evidence at issue. " 'Absent conflicting extrinsic evidence, the validity of an arbitration clause, including whether it is subject to revocation as

3.

unconscionable, is a question of law subject to de novo review.' " (*Magno v. The College Network, Inc.* (2016) 1 Cal.App.5th 277, 283.) " 'However, where an unconscionability determination "is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence." ' " (*Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 820–821; see *Fisher v. MoneyGram Internat., Inc.* (2021) 66 Cal.App.5th 1084, 1094.)

Our review of waiver similarly depends on whether the decision is made based on disputed facts or inferences, in which case it is reviewed for substantial evidence. (See *Campbell v. Sunshine Behavioral Health, LLC* (2024) 105 Cal.App.5th 419, 428.) Because, as explained further below, the trial court did not apply the correct legal standard as articulated in later filed opinions, we will address the question de novo. (*Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 585 (*Quach*) ["In ruling on Commerce Club's motion to compel arbitration, the trial court did not have the benefit of *Morgan* [*v. Sundance, Inc.* (2022) 596 U.S. 411 (*Morgan*)] or of our decision today, so in considering Quach's waiver defense, it did not apply the generally applicable law of waiver. We do so now, reviewing de novo the undisputed record of the trial court proceedings and asking whether *Quach* has established by clear and convincing evidence that Commerce Club knew of its contractual right to compel arbitration and intentionally relinquished or abandoned that right."].)

## II. *The Trial Court Erred in Concluding Appellant Failed to Show the Existence of an Arbitration Agreement*

The trial court in this case found a dispute of fact concerning the authenticity of the arbitration agreement purportedly existing between the parties based solely on respondent's failure to remember signing this document. From there, it concluded appellant had failed to adequately authenticate the document, and therefore no evidence

was in front of the court establishing an agreement to arbitrate existed. This court recently clarified its position in relation to the evidence necessary to create a dispute of fact regarding the admissibility of an arbitration agreement purportedly signed by an employee in *Ramirez*.[1] While decisions of an intermediate appellate court are not, strictly speaking, binding on other panels of the same court, we follow such decisions unless presented with a compelling reason to depart from it. (*Opsal v. United Services Auto. Assn.* (1991) 2 Cal.App.4th 1197, 1203–1204 ["Respect for our colleagues and the orderly administration of justice—as well as the need of the trial bench, bar and litigants for certainty in the development of the common law—dictate that there be a compelling reason before we overrule a decision of another panel of this court."]; *People v. Bolden* (1990) 217 Cal.App.3d 1591, 1598; see *Imperial Irrigation Dist. v. State Wat. Resources Control Bd.* (1990) 225 Cal.App.3d 548, 556.) Respondent presents no compelling reason to depart from *Ramirez* here.

As we noted in *Ramirez*, a preliminary determination in any petition to compel arbitration is the existence of an agreement to arbitrate, and whether an arbitration agreement exists is subject to a three-step burden-shifting framework. (*Ramirez*, *supra*, 102 Cal.App.5th at p. 830.) The party seeking arbitration carries its initial burden of presenting prima facie evidence of a written arbitration agreement either by attaching a copy of the arbitration agreement claimed to bear the opposing party's signature, or by stating the provisions of the agreement verbatim in the petition. (*Id.* at pp. 830–831.) The party seeking arbitration does not need to " 'follow the normal procedures of document authentication' " in presenting this prima facie evidence. (*Id.* at p. 831.)

Once prima facie evidence has been presented, the burden shifts to the party opposing arbitration to " 'identify a factual dispute as to the agreement's existence' and []

---

[1]     Our decision in *Ramirez* was issued after the trial court's decision in this case, and we do not fault that court for failing to anticipate our ruling.

present admissible evidence to support the existence of that factual dispute." (*Ramirez*, *supra*, 102 Cal.App.5th at p. 832.) We noted the opposing party need not "*prove* that his or her purported signature is not authentic, but must submit *sufficient evidence to create a factual dispute* and shift the burden back to the arbitration proponent, who retains the ultimate burden of proving, by a preponderance of the evidence, the authenticity of the signature." (*Id.* at pp. 832–833.)

In *Ramirez*, we noted and discussed the split of authority created by *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158 and *Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747 as to whether a party's statement that they do not remember signing the document is sufficient to create such a factual dispute, when the document bears a handwritten signature. (*Ramirez*, *supra*, 102 Cal.App.5th at pp. 832–835.) We ultimately sided with *Iyere*, concluding that "if a plaintiff presented with a handwritten signature on an arbitration agreement is unable to allege the signature is inauthentic or forged, the plaintiff's failure to recall signing the agreement 'neither creates a factual dispute as to the signature's authenticity nor affords an independent basis to find that a contract was not formed.' " (*Ramirez*, at p. 835.)

Here, appellant presented a copy of the purported arbitration agreement containing a handwritten signature. Respondent did not allege in the trial court, and does not represent in this court, that the handwritten signature on this document is not his. Rather, respondent merely asserted he does not recall signing the specific arbitration agreement at issue, although he does concede he signed many documents during his hiring. While he claimed no one explained what arbitration was or specifically called out the arbitration agreement during this onboarding process, he does not do the only thing we require of a plaintiff in this situation, which is to dispute the authenticity of a signature on the claimed arbitration agreement as their own. As we said in *Ramirez*, "an individual is capable of recognizing his or her handwritten signature and if that individual does not deny a handwritten signature is his or her own, that person's failure to remember signing the

6.

document does not create a factual dispute about the signature's authenticity." (*Ramirez, supra*, 102 Cal.App.5th at p. 825.)

Respondent attempts to distinguish *Ramirez* on the basis that that opinion also criticized the party opposing arbitration for failing to affirm he had even inspected those documents before saying he could not remember them. This is a distinction of no significance. While we did offer that criticism in *Ramirez*, the core of the holding was simple: an individual should be able to recognize whether a purported handwritten signature is their own. If it is not their signature, they should declare as much, thereby creating a factual dispute as to whether they signed the agreement in question. If they do not dispute the authenticity of a signature presented by the moving party as belonging to them, we will not infer a factual dispute about authenticity from their mere lack of memory.

We conclude appellant made a prima facie case of the existence of an arbitration agreement, and respondent did not create a factual dispute about the existence of that agreement because he failed to dispute the authenticity of his purported signature.[2] As such, the trial court erred in compelling appellant to authenticate the document through the normal channels, and should have concluded an arbitration agreement exists.

### III.  *The Trial Court Erred in Finding Unconscionability*

The trial court found, as an alternative ground for its holding, that the agreement was unconscionable. Because the finding of unconscionability was based on undisputed facts and the face of the arbitration agreement, we review de novo. *(Fisher v. MoneyGram Internat., Inc., supra*, 66 Cal.App.5th at p. 1094; *Magno v. The College Network, Inc., supra*, 1 Cal.App.5th at p. 283.)

---

[2]    Again, while the briefing in the trial court occurred prior to the issuance of *Ramirez*, it is notable appellant also does not represent in briefing here that there is any dispute as to the authenticity of his signature, or that he could proffer such evidence on remand.

Unconscionability is a defense to the enforcement of arbitration agreements in the same manner that it is a defense to all other contracts. (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1142.) " '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).)

We obviously find significant procedural unconscionability here, considering the adhesive nature of the contract, the inability to bargain, and appellant's candid admission of procedural unconscionability. (*Armendariz*, *supra*, 24 Cal.4th at p. 115 ["[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement."].) However, we do not find substantive unconscionability.

The trial court found substantive unconscionability based on two factors: respondent's failure to agree to pay all costs of the arbitration and a lack of mutuality because only respondent is forced to arbitrate disputes. We do not think either of these is present in this contract.

By statute, "[u]nless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit." (Code Civ. Proc.. § 1284.2.) The combination of this default rule and mandatory arbitration clauses in employment contracts raises the specter of unconscionability, because it forces an employee with no bargaining power to pay for the privilege of seeking legal redress

8.

which is already afforded to them by the courts. Due to the importance of vindicating state labor laws, our Supreme Court held in *Armendariz* that, "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." (*Armendariz*, *supra*, 24 Cal.4th at pp. 110–111.) It ultimately held "a mandatory employment arbitration agreement that contains within its scope the arbitration of FEHA claims impliedly obliges the employer to pay all types of costs that are unique to arbitration. Accordingly, we interpret the arbitration agreement in the present case as providing, consistent with the above, that the employer must bear the arbitration forum costs." (*Id.* at p. 113.)

It is clear from the above language that the Supreme Court in *Armendariz* did not find that allowing for the default statutory remedy made the contract unconscionable, thus making it unenforceable. Rather, the remedy was to imply a term requiring the employer to bear the costs. The opinion specifically noted, "[t]he absence of specific provisions on arbitration costs would therefore not be grounds for denying the enforcement of an arbitration agreement." (*Armendariz*, *supra*, 24 Cal.4th at p. 113.)

The agreement at issue here does not specifically state who will bear costs in relation to an arbitration, and thus Code of Civil Procedure section 1284.2 presumptively applies, requiring pro rata sharing of arbitration costs. However, the agreement *does* recognize the holding in *Armendariz*, stating "[i]f CCP § 1284.2 conflicts with other substantive statutory provisions or controlling case law, the allocation of costs and arbitrator fees shall be governed by said statutory provisions or controlling case law instead of CCP § 1284.2." *Armendariz* is just such controlling case law. Accordingly, *Armendariz*, unless and until overruled, reads into the contract an implied term that the employer will pay the costs of arbitration. The arbitration agreement here acknowledges that possibility and agrees *Armendariz* controls the payment of costs in this case. Thus,

9.

there is no substantive unconscionability caused by the default splitting of costs found in Code of Civil Procedure section 1284.2.**3**

Additionally, we find no lack of mutuality. The Supreme Court has stated a " 'modicum of bilaterality' " must exist in arbitration agreements, particularly adhesive ones, to avoid unconscionability. (*Armendariz*, *supra*, 24 Cal.4th at p. 117.) "Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.' " (*Ibid.*) However, there is mutuality here. The arbitration provision specifically applies to both parties. It states, in pertinent part, "I and the Company both agree that any claim, dispute, and/or controversy that *either party may have against one another* … arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company … shall be submitted to and determined exclusively by binding arbitration." (Italics added.) Clearly, the arbitration provision requires both parties to arbitrate against one another. It does not only apply to respondent.

Thus, neither of the bases on which the trial court relied for substantive unconscionability exist here. Respondent does not suggest any other basis for finding substantive unconscionability. Thus, we conclude as a matter of law that the arbitration agreement is not unconscionable.

## IV.    *Appellant Waived Its Right to Compel Arbitration*

The trial court also found appellant waived its right to compel arbitration by failing to seek arbitration until after several years of litigation had elapsed. "Generally,

---

**3**    Indeed, it would be anomalous to find unconscionability based on a term that was not included in the contract, but rather was the default rule set by statute.

the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court." (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*), abrogated on other grounds in *Quach*, *supra*, 16 Cal.5th 562.) Only where the facts are susceptible of only one reasonable inference may the issue of waiver be decided as a matter of law. (*Ibid*.; see *Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1450.)

In the recent case of *Quach*, our Supreme Court abrogated prior statements it had made in *St. Agnes* about the application of waiver in the arbitration context. The *St. Agnes* approach, which applied for most of the last several decades, required " 'the party seeking to establish a waiver' " to bear " 'a heavy burden of proof,' " noting " 'any doubts regarding a waiver allegation should be resolved in favor of arbitration.' " (*Quach*, *supra*, 16 Cal.5th at p. 573.) The court set forth a six-factor test in *St. Agnes*, which the trial court duly applied in this case. (*Quach*, at p. 573.) This test required the showing of, among other things, "prejudice resulting from the moving party's litigation-related conduct" in order to invoke waiver, based on a " ' " 'strong public policy in favor of arbitration.' " ' " (*Id.* at p. 574.) This showing of prejudice required looking at whether the opposing party's conduct " 'undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration.' " (*Ibid.*) "Thus, in ruling on waiver questions, California courts have, for decades, been applying a framework grounded in a 'strong policy favoring arbitration' over litigation, under which they hold parties seeking to establish waiver to a 'heavy burden of proof,' requiring a showing of prejudice beyond the loss of time and expenses normally associated with litigating a dispute and resolving any doubts 'in favor of arbitration.' " (*Ibid.*)

However, the recent case of *Morgan*, *supra*, 596 U.S. 411 established there is no preference either for or against arbitration under the Federal Arbitration Act, thus abrogating the arbitration-specific requirement of showing prejudice as part of waiver.

11.

(*Quach*, *supra*, 16 Cal.5th at pp. 575–583.)  In *Quach*, our Supreme Court both acknowledged the lessons of *Morgan* and extended that holding to the California Arbitration Act, finding that the general law of waiver should apply.  (*Ibid.*)

Thus, under both *Morgan* and *Quach*, courts are no longer required to apply the special multi-factor test set forth in *St. Agnes* in determining whether a party has waived their right to enforce an arbitration agreement; instead, they apply the common law without preference for outcome.  (*Morgan*, *supra*, 596 U.S. at pp. 418–419 ["The policy is to make 'arbitration agreements as enforceable as other contracts, but not more so.' "]; *Quach*, *supra*, 16 Cal.5th at p. 583 ["[I]n determining whether a party to an arbitration agreement has lost the right to arbitrate by litigating the dispute, a court should treat the arbitration agreement as it would any other contract, without applying any special rules based on a policy favoring arbitration."].)  Under *Quach*, we now look to the common law defense of waiver:  "[t]o establish waiver under generally applicable contract law, the party opposing enforcement of a contractual agreement must prove by clear and convincing evidence that the waiving party knew of the contractual right and intentionally relinquished or abandoned it."  (*Quach*, at p. 584.)  "Under the clear and convincing evidence standard, the proponent of a fact must show that it is 'highly probable' the fact is true."  (*Ibid.*)  "The waiver inquiry is exclusively focused on the waiving party's words or conduct"—meaning the waiver can be express or implied—and the effect of those words or actions "on the party seeking to avoid enforcement of the contractual right" is not relevant.  (*Id.* at p.585.)  The party seeking to establish waiver need not establish that they were harmed by the other party's conduct.  (*Id.* at p. 585.)

While normally we would remand this question to the trial court to determine waiver in the first instance, we note here the court's finding of waiver was premised solely on the basis of undisputed facts.  Thus, it is appropriate for us to make this determination in the first instance.  (*Quach*, *supra*, 16 Cal.5th at p. 585.)

12.

" 'Waiver is the intentional relinquishment of a known right after full knowledge of the facts and depends upon the intention of one party only. Waiver does not require any act or conduct by the other party.' " (*Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.* (2006) 144 Cal.App.4th 1175, 1189–1190.) This may occur as " 'the result of an act which, according to its natural import, is so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.' " (*Crest Catering Co. v. Superior Court* (1965) 62 Cal.2d 274, 278; see *Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 475.)

We find waiver here. Appellant was obviously aware of its contractual right to arbitrate, since it asserted the arbitration agreement as an affirmative defense in both its original and amended answers. Further, appellant was well aware of the *Viking River* decision, as the evidence in the trial court shows the parties first discussed its implications on August 4, 2022. Thus, the only question for us is whether appellant acted in a way that was sufficiently inconsistent with an intent to enforce as to induce a reasonable belief that it had relinquished its right to arbitrate.

The record shows that appellant first raised its potential intent to seek to compel arbitration in early August 2022. Following that, the parties discussed this matter by telephone. Respondent noted that, under *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, he would not lose standing to pursue representative PAGA claims, even if his individual claim was ordered to arbitration. Indeed, in *Kim*, the plaintiff settled his individual claims, and yet was found to still maintain PAGA standing after the settlement, because standing attaches at the beginning of the suit by dint of being an "aggrieved employee," in the phrasing of the statute. (*Kim*, at pp. 81–82, 84.) The court noted in *Kim* that PAGA claims are distinct from a class action and are instead in the nature of a *qui tam* suit, because the plaintiff sues on behalf of the state, and thus the plaintiff need not remain in alignment with the absent members of the group of wronged individuals. (*Kim*, at pp. 81, 86.) Thus, here, arbitrating respondent's individual claims

13.

would be largely a waste of time, as it would not stop respondent from pursuing the representative claims, which, given the significantly greater liability potential, are presumably the main driver of this suit.

Respondent also pointed out to appellant the prudence of waiting for a final decision in *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, which was then pending review in our Supreme Court and would determine whether *Kim* remained good law or whether dicta in *Viking River* would prevent the representative PAGA claims from moving forward. Indeed, in July 2023, our Supreme Court reaffirmed *Kim*, and held that a person retains standing as a plaintiff under PAGA even if their individual claims have been forced to arbitration and resolved. (*Adolph*, at p. 1114.)

In his confirmatory e-mail, respondent indicated he remained open to mediating the claims alleged in the lawsuit, so long as mediation proceeded for *all* claims, not merely his individual claims. However, in the absence of clarity as to how appellant would proceed, respondent noted he would need to continue engaging in formal discovery, which the parties had largely delayed pending a potential mediation. Appellant did not substantively respond to respondent's legal arguments, but rather simply agreed to mediation in a reply approximately a month later, at the start of September 2022. Later in September 2022, the parties filed a joint stipulation to vacate the trial date and all related dates, such as discovery deadlines, pending mediation, which was agreed to take place in May 2023. However, without further discussion or notice, appellant filed a petition seeking to compel arbitration of respondent's individual claims on January 12, 2023, some four months after it agreed to mediation of all claims and secured a waiver of discovery deadlines.

Considered collectively, we find waiver by clear and convincing evidence here. This lawsuit was first filed in August 2020. While appellant included certain assertions of arbitrability in its answer and amended answer in September and November 2020, it did not file any request to compel arbitration for approximately two and a half years.

14.

During that time, the parties engaged in substantive litigation, including discovery. That the parties did not engage in a tremendous amount of motion practice is not controlling, considering discovery is often the most time and resource-consuming part of civil litigation.

Even assuming it would have been fruitless to seek to compel arbitration prior to the decision in *Viking River*, appellant still waited for more than four months after that decision was final to seek arbitration. That is not consistent with a party that has always wanted to arbitrate a dispute, and was merely awaiting a change in the law to permit it to do so. Moreover, the parties affirmatively discussed the possibility of a motion to compel arbitration in August 2022, following which respondent sent an e-mail making the eminently reasonable argument that arbitration of his individual claims would not advance resolution of the litigation in any substantial way, because he retained standing to pursue representative PAGA claims under California law regardless. In that same e-mail, respondent noted he remained open to mediating the matter so long as it applied to all PAGA claims and not merely his individual ones. In response to this long and detailed communication, appellant said nothing about continuing to pursue a motion to compel arbitration of respondent's individual claims. Instead, appellant simply agreed to mediation. Further, appellant used this agreement to mediate all claims—both individual and representative—to secure a stipulation vacating the trial date and any attendant discovery deadlines. This is sufficient, in the context of this case, " ' "to induce a reasonable belief" ' " that appellant was relinquishing its right to arbitrate respondent's individual claims. (*Lynch v. California Coastal Com.*, *supra*, 3 Cal.5th at p. 475; *Crest Catering Co. v. Superior Court*, *supra*, 62 Cal.2d at p. 278.)

Appellant argues that "neither the passage of time nor mere participation in litigation constitutes waiver of the right to enforce an arbitration agreement," because "[p]rejudice to the party opposing arbitration must be shown." This is simply no longer true following *Quach*. (*Quach*, *supra*, 16 Cal.5th at p. 582 ["Because the state law

15.

arbitration-specific prejudice requirement finds no support in statutory language or legislative history, we now abrogate it."].) Appellant surely knows this, given its citation to *Quach* as an alleged basis for error in the immediately preceding pages of its brief.

Accordingly, we find appellant has waived its right to arbitrate respondent's individual claims by clear and convincing evidence.

## **DISPOSITION**

The trial court's order denying the petition to compel arbitration is affirmed. This matter is remanded to the trial court for further proceedings not inconsistent with this opinion. Respondent shall recover his costs on this appeal.

                                                      DE SANTOS, J.

WE CONCUR:


DETJEN, Acting P. J.


SNAUFFER, J.

16.